OPINION OF THE COURT
Memorandum.
The order of the Appellate Division should be affirmed.
Defendant was convicted of murder in the second degree and criminal possession of a weapon in the second degree for the shooting death of Transit Police Officer Irma Lozada. On September 21, 1984, defendant snatched a gold rope chain from the neck of a subway passenger at the Wilson Avenue subway station in Brooklyn. Officers Lozada and Giambalvo chased defendant from the subway station and pursued him at street level. Lozada caught up with defendant in a nearby vacant lot, but was overpowered as she tried to apprehend him. Defendant then allegedly shot Lozada twice in the head with her revolver. Geraldine McGirt, who lived in an apartment overlooking the vacant lot, saw a man whom she identified as defendant hovering over a white woman on the ground. When McGirt turned away from the window she heard the two gun shots. Defendant sold the gold chain to a local store owner who recognized defendant as a frequent patron. Both McGirt and the purchaser of the chain identified defendant in court.
At trial, two tape-recorded statements by defendant were admitted into evidence and played for the jury. Defendant does not contest their admissibility on this appeal. In the first *820 of the two statements, defendant admitted stealing the chain, but denied having any role in the shooting. Defendant claimed that he saw an acquaintance, Eric, shoot a white woman after she pulled a gun on him. Upon further questioning, defendant admitted that the gun was hidden underneath the bureau in his bedroom. In the second taped statement, defendant again admitted stealing the chain but added that after Eric had shot the woman, Eric handed the gun to defendant and that he fired a shot at the woman. Defendant claimed that he did not know whether that shot struck the woman.
As part of his defense that he had been framed by the police, defendant denied that the voice on the tapes was his. On rebuttal, the People offered the testimony of a voice analysis expert who stated that by comparing spectrographs of the two statements and the voice sample, it was her opinion that it was defendant’s voice in both of the taped statements. Although defendant had moved for a hearing on the scientific reliability of voice spectrographs, the court declined to hold a hearing and stated that defendant would be permitted to cross-examine the People’s expert on the reliability of the evidence. On appeal, the Appellate Division concluded that it was error to admit the spectrographie evidence without a hearing on its reliability, but that the error was harmless.
Defendant’s principal argument is that there should be a reversal because the court erred in permitting expert testimony regarding the voice spectrographie analysis. Defendant, however, does not contend that spectrographie evidence is inadmissible under New York law. Indeed, the parties agree that no appellate court in this State has previously addressed this question and that the three trial court decisions are not in accord (see, People v Bein, 114 Misc 2d 1021 [admissible]; People v Collins, 94 Misc 2d 704 [not admissible]; People v Rogers, 86 Misc 2d 868 [admissible]). Defendant argues, rather, that because New York has not yet held that spectrographie evidence has gained general acceptance in the scientific community as reliable, it was reversible error for the trial court to admit such evidence without first having a hearing on its reliability. The People contend that: (1) a trial court may rule on the general acceptance of a scientific technique as reliable without a hearing based on other judicial opinions or legal authorities; and (2) any error in failing to inquire preliminarily into reliability was harmless.
We do not agree that the court could properly have determined that voice spectrography is generally accepted as relia *821 ble based on the case law and existing literature on the subject (see, e.g., Matter of Lahey v Kelly, 71 NY2d 135, 144; People v Middleton, 54 NY2d 42, 49-50). In this instance, there is marked conflict in the judicial and legal authorities as to the reliability of the procedure. New York courts are split on the issue of admissibility (see, People v Bein, supra; People v Collins, supra; People v Rogers, supra). Moreover, while several jurisdictions have held that voice spectrography evidence is sufficiently reliable to be admissible (see, e.g., United States v Williams, 583 F2d 1194 [2d Cir]; Commonwealth v Lykus, 367 Mass 191, 327 NE2d 671; State v Williams, 388 A2d 500 [Me]; State ex rel. Trimble v Hedman, 291 Minn 442, 192 NW2d 432), others have reached just the opposite conclusion (see, e.g., Windmere, Inc. v International Ins. Co., 105 NJ 373, 522 Ai2d 405 [1987 decision surveying judicial writings on voice spectrography]; State v Gortarez, 141 Ariz 254, 686 P2d 1224; People v Kelly, 17 Cal 3d 24, 549 P2d 1240, 130 Cal Rptr 144; Commonwealth v Topa, 471 Pa 223, 369 A2d 1277). The legal scholarship on the admissibility of voice spectrography is likewise conflicting (see, e.g., Decker and Handler, Voiceprint Identification Evidence — Out of the Frye Pan and Into Admissibility, 26 Am U L Rev 314 [1977] [admissible]; Note, Voice Spectrography — Reliability of Voiceprints Not Established, Therefore Inadmissible, 18 Seton Hall L Rev 405 [1988]; Greene, Voiceprint Identification: The Case In Favor of Admissibility, 13 Am Crim L Rev 171 [1975]; Jones, Danger — Voice-prints Ahead, 11 Am Crim L Rev 549 [1973] [inadmissible]). We conclude that the trial court lacked a proper basis to admit the voice spectrographie evidence without a preliminary inquiry into reliability.
We agree with the People, however, that the error was harmless (see, People v Crimmins, 36 NY2d 230, 241). The voice spectrographie evidence did not affect the admissibility of the taped statements which, together with other testimony linking defendant to the shooting, the murder weapon found in defendant’s bedroom and defendant’s admitted commission of the chain snatching constitute overwhelming proof of guilt.
Defendant’s remaining contention as to the constitutionality of CPL 450.10 and 450.15 is not properly before the court on this appeal from the Appellate Division order modifying the judgment of conviction.
Chief Judge Wachtler and Judges Simons, Kaye, Titone, Hancock, Jr., and Bellacosa concur.
Order affirmed in a memorandum.