OPINION OF THE COURT
Felice K. Shea, J.
The issue presented by the People’s motion for a pretrial *102 Frye[2] hearing is whether a male defendant who has been sexually assaulted can introduce expert testimony at trial regarding rape trauma syndrome without first establishing that such testimony has attained acceptance within the scientific community. The motion was made in response to defendant’s notice of intention to call an expert at trial who will testify that defendant exhibited symptoms of male rape trauma syndrome[3] and that the syndrome explains why defendant failed to report a sexual assault to the police.
Defendant is charged with two counts of grand larceny in the third degree arising out of a homosexual incident between the complainant and defendant. The People allege that the incident was consensual in nature and that defendant thereafter extorted money from the complainant by threatening to expose him as a homosexual and to bring charges of "homosexual rape”. Defendant contends that the complainant in fact "raped” him and that defendant’s subsequent actions were lawful efforts to obtain compensation for this wrong.[4]
The People concede that New York law permits expert testimony of rape trauma syndrome without a Frye hearing. However, the People argue, assuming the truth of defendant’s factual contentions, that rape trauma syndrome evidence is inadmissible without a Frye hearing because defendant was sodomized and not raped. The People argue further that there is no precedent in New York or in any other jurisdiction for accepting expert testimony of a male sexual victimization syndrome, and further, that because the victim is male, defendant’s proffered testimony would be, at best, a variation on rape trauma syndrome, his reaction to sexual assault would be different from that of a female victim, and the scientific acceptance of such testimony would need to be tested. Defendant asserts that male victims of sexual assault suffer essentially the same posttraumatic stress symptoms as do female rape victims and that disparate treatment of defendant’s proposed expert testimony would deny him equal protection of law.
*103 Pursuant to the Frye rule, which governs in New York State, expert testimony relating to scientific evidence is admissible at trial only if it is generally accepted as reliable by the relevant scientific community.[5] (People v Wesley, 83 NY2d 417, 422-423.) However, a Frye hearing to determine acceptance in the scientific community is not needed in every case in which scientific evidence is proffered. In Matter of Lahey v Kelly (71 NY2d 135, 144) the Court of Appeals affirmed convictions based on drug test results admitted at trial, finding that "[n]either expert testimony nor detailed findings by the scientific community are essential before scientific tests or procedures are recognized * * * The court may find scientific tests reliable based on the general acceptance of the procedures as shown through legal writings and judicial opinions.” (Accord, People v Middleton, 54 NY2d 42, 49-50 [bite mark evidence]; People v Magri, 3 NY2d 562, 566 [radar]; cf., People v Jeter, 80 NY2d 818, 820-821 [Frye hearing needed to determine admissibility of spectrographie voice evidence].)
In People v Taylor (75 NY2d 277, 286), New York’s highest Court analyzed the scientific literature on rape trauma syndrome and held that although "there is no single typical profile of a rape victim * * * the relevant scientific community has generally accepted that rape is a highly traumatic event that will in many women trigger the onset of certain identifiable symptoms.” The Taylor case affirmed the propriety of admitting expert testimony concerning the syndrome at a rape trial to explain conduct of the victim after the attack. The issue here is whether the Taylor holding should be applied in a case where the victim of the sexual assault is a man. Do the case law, legal writings and scientific literature support the conclusion that the scientific community accepts a male rape trauma syndrome about which expert testimony might assist a jury?
For purposes of this motion, the court must assume that the facts are as defendant alleges and that the defendant was sexually assaulted. Penal Law § 130.35 (1) defines rape in the first degree as forcible intercourse between a man and a woman. Deviate sexual intercourse by force where a man is the victim of another man is proscribed by Penal Law § 130.50 (1) defining sodomy in the first degree. It is clear, however, that the rape statute does not define the victims who may claim to have *104 suffered rape trauma syndrome in the courts of New York. Rape trauma syndrome is "a therapeutic and not a legal concept.” (People v Taylor, supra, at 287.) Although the therapeutic concept of a posttraumatic stress syndrome associated with sexual assault was developed by studying women rape victims, New York courts, relying on People v Taylor (supra) have held that other victims of sexual assault may exhibit an analogous syndrome. Female children who are the victims of rape or attempted rape may suffer from what scientists label "child sexual abuse syndrome” which, under appropriate circumstances, can be explained by expert testimony. (People v Burgess, 212 AD2d 721; People v Naranjo, 194 AD2d 747, Iv denied 82 NY2d 900; People v Guce, 164 AD2d 946, 950, Iv denied 76 NY2d 986; People v Ivory, 162 AD2d 551, 552). In People v Singh (186 AD2d 285), the terminology employed was "post-traumatic stress syndrome exhibited by victims of child sexual abuse”. By approving the admission of expert testimony as to the syndrome without a Frye hearing, the appellate courts have implicitly found the syndrome generally accepted in the scientific community.
Judicial acceptance of a syndrome associated with sexual assault is not limited to cases involving rape or attempted rape. People v Taylor (supra) is authority for the recognition of a child sexual abuse syndrome where a female child was sodomized or otherwise sexually abused, but not raped. (People v Califano, 216 AD2d 574, 575, Iv denied 86 NY2d 791; People v Sansevero, 185 AD2d 256; People v Knupp, 179 AD2d 1030 [syndrome recognized but conviction reversed because expert testimony introduced to prove crime took place].)
Expert testimony of child sexual abuse syndrome has been accepted in cases where the victim is male as well. In People v Van Loan (179 AD2d 885), defendant was convicted of aggravated sexual abuse, sodomy in the first degree and second degree based on sexual assault of a male child. The Third Department, relying on People v Taylor (supra), approved the admission of testimony by a child therapist to explain the victim’s behavior. (See also, People v Keindl, 68 NY2d 410, 422; People v Mercado, 188 AD2d 941, 942 [syndrome recognized in male child victim but conviction overturned because testimony of social worker too broad].)
New York courts have not addressed the issue of the applicability of rape trauma syndrome to adult male victims of sexual assault. It would appear that the question has arisen only in Minnesota, where, on the appeal of a murder convic *105 tian, the Minnesota Supreme Court held that the trial court did not err in excluding expert testimony on male sexual victimization syndrome. The trial court had held a pretrial hearing and found that the defendant’s witness did not establish that the theory of male sexual victimization reached the required level of scientific acceptance. (State v Borchardt, 478 NW2d 757 [Minn 1991].)
The Minnesota case is of limited value in deciding the issue before this court. At the time of Borchardt (supra), rape trauma syndrome had not been recognized as scientifically accepted in Minnesota.[6] No review of the scientific literature was undertaken and the trial court based its ruling on the testimony of one psychologist/family therapist. The appellate court paid deference to the trial court’s broad discretion to make evidentiary rulings and found that the opinion of the proposed expert would not have assisted the jury in any case. Moreover, Borchardt was decided in 1991 and the subsequent body of research since that time further diminishes its persuasive value.
A review of literature describing the effect of sexual assault on men reveals that male victims, both heterosexual and homosexual, exhibit a well-defined trauma syndrome similar to and parallel to that found in female victims of rape. No article or study has been cited by the People that suggests otherwise.
The Bureau of Justice Statistics, the statistical agency of the U. S. Department of Justice, in its National Crime Victimization Survey dated August 1995, indicates that about 500,200 rape/sexual assaults were reported by women in 1992-1993.[7] The Bureau of Justice gives the comparable figure for men as 48,500. Mezey and King, in Male Victims of Sexual Assault (at 1 [1992] [hereinafter Mezey and King, Male Victims of Sexual Assault]), estimate rape of men to be 5-10% of total rapes reported. The American Medical Association, bringing attention to an epidemic of sexual assault, recently reported that males are the victims in 5% of reported sexual assaults. (NY Times, Nov. 7, 1995, at 21, col 1.)
The statistics on male sexual assault tell only part of the story. Rape is a notoriously underreported crime and male *106 victims of sexual assault are even less likely than female victims to report their assault.[8] Not surprisingly, studies of the effects of sexual assault on men are based on relatively small numbers of victims.
Male rape trauma syndrome is described as "a common reaction in which depression, anger, guilt, fear of being homosexual, sexual malfunctioning, flashbacks, and suicidal feelings are experienced from weeks to years after assault * * * [L]ike women, male rape survivors experience a disruption in their biopsychosocial functioning.” (Isely, Adult Male Sexual Assault in the Community: A Literature Review and Group Treatment Model, in Rape and Sexual Assault III, A Research Handbook 161, 165 [Burgess ed 1991].) Mezey and King (The Effects of Sexual Assault on Men: A Survey of 22 Victims, 19 Psychological Medicine 205, 207 [1989] [hereinafter Mezey and King, The Effects of Sexual Assault on Men: A Survey of 22 Victims]) report that the male victims described major detrimental effects on their lives and exhibited an increased sense of vulnerability, anger, damaged self-image, emotional distancing, a need for security precautions, sexual dysfunction, and phobias. The authors conclude (at 205) that "[t]he immediate and long term responses [of male victims] were very similar to those described in female victims of rape.” "[L]ike women, men often react to extreme personal threat with frozen helplessness * * * There were striking similarities between the reactions of male victims and those reported for women who have been sexually assaulted.” (Mezey and King, Male Victims of Sexual Assault, op. cit., at 8, 10.) Goyer and Edelman (Same-Sex Rape of Nonincarcerated Men, 141 Am J Psychiatry 576 [1984]) relate that male victims of sexual assault experience "mood disturbances (e.g., fear, depression, anger), somatic disturbances (e.g., in sleep, appetite, digestion) * * * difficulties in peer relationships * * * and * * * subsequent sexual problems.” (See also, Josephson, The Male Rape Victim: Evaluation and Treatment, 8 J Am Coll Emergency Physicians 14 [1979]; Cotton and Groth, Sexual Assault in Correctional Institutions: Prevention and Intervention, in Victims of Sexual Aggression, Treatment of Chil *107 dren, Women and Men 127, 131-132 [Stuart and Greer eds 1984]; Kaufman, Rape of Men in the Community, in Victims of Sexual Aggression, Treatment of Children, Women and Men 156, 164 [Stuart and Greer eds 1984].) In all of these studies, the reactions and feelings expressed by male victims of sexual assault were found to be similar to those of females traumatized by rape.
A common characteristic of male and female rape victims is delay in reporting the crime. In one study of male victims, most men did not report the sexual assault to anyone in the immediate aftermath. (Mezey and King, Male Victims of Sexual Assault, op. cit., at 5.) A study comparing survivors of male sexual assault with Vietnam veterans found common characteristics of trauma and noted that "delayed response * * * has been observed in a significant number of male rape survivors”. (Evans, Brother to Brother: Integrating Concepts of Healing Regarding Male Sexual Assault Survivors and Vietnam Veterans, 2 The Sexually Abused Male, 57, 63 [Hunter ed 1990]; see also, Groth and Burgess, Male Rape: Offenders and Victims, 137 Am J Psychiatry 806, 810 [1980].)
There are other similarities between male and female sexual assault. A number of authorities state that male sexual assault, as in the case of female rape, is an expression of anger, power, dominance and control over another. (See, e.g., Kaufman, Divasto et al., Male Rape Victims: Noninstitutionalized Assault, 137 Am J Psychiatry 221, 223 [1980]; Evans, op. cit., at 62; Rochman, op. cit., at 40; Cotton and Groth, op. cit., at 131-132; Mezey and King, Male Victims of Sexual Assault, op. cit., at 131; Groth and Burgess, op. cit., at 809.)
There are studies that comment on differences between male and female victims of sexual assault. Men are likely to be abused more violently and by multiple attackers, to sustain more serious injuries, to feel more stigmatized and, as noted supra, men are less likely to report the crime against them. (Isely, op. cit., at 164-165; Kaufman, Divasto et al., op. cit., at 223; Kaufman, op. cit., at 158.) Male victims appear to be more reluctant to report their assaults for a number of reasons. Heterosexual male victims may feel that their sexual orientation is called into question and homosexual male victims fear that their sexual preference may be revealed. There is a societal belief that a man should be able to defend against sexual assault. (Kaufman, op. cit., at 163.) Homosexuals may perceive the police to be unsympathetic. (Mezey and King, The Effects of Sexual Assault on Men: A Survey of 22 Victims, op. cit, at 207.)
*108 Commentators have found two emotional styles of response to the trauma of sexual assault. Fifty percent of women in a well-known study reacted in a "controlled” style and were calm, composed, subdued, and withdrawn. Fifty percent were found to react in an "expressive” style — with crying, sobbing, smiling, restlessness. (Burgess and Holmstrom, Rape Trauma Syndrome, 131 Am J Psychiatry 981, 982 [1974].) By contrast, in Kaufman, Divasto et al. (op. cit., at 223), 79% of the male sample studied exhibited a "controlled” reaction. The predominance of a controlled reaction among men may reflect society’s view that it is unmanly for men to express emotion.
The differences noted in the literature between male and female victims of sexual assault demonstrate that male victims tend to be more traumatized, less likely to report, and less likely to be openly emotional. Some men may question their sexual identity. (Rochman, op. cit., at 42.) These differences between the reactions of men and women do not cast doubt on the reliability of expert testimony as to male rape trauma syndrome any more than would differences in the reactions of individual female rape victims (see, People v Taylor, supra, at 286). The essential and underlying fact remains that victims of trauma "suffer predictable psychological harm” and that "traumatic syndromes have basic features in common”. (Herman, Trauma and Recovery 3 [Basic Books 1992].) "Traumatic events * * * overwhelm the ordinary human adaptations to life * * * They confront human beings with the extremities of helplessness and terror, and evoke the responses of catastrophe.” (Id., at 33.)
The American Psychiatric Association in its current Diagnostic and Statistical Manual of Mental Disorders (at 424 [4th ed rev 1994]) lists sexual assault as one of the extreme traumatic stressors that can result in characteristic symptoms of post-traumatic stress disorder.[9] The response to the traumatic event will involve fear, helplessness, horror, persistent reexperiencing of the traumatic event, persistent avoidance of stimuli associated with the trauma, numbing of general responsiveness and persistent symptoms of arousal. The diagnostic criteria for posttraumatic stress disorder contained in the Diagnostic and Statistical Manual were influential in persuading the Taylor Court (supra) that the scientific community "has accepted that rape as a stressor can have marked, identifiable effects on a *109 victim’s behavior”. (People v Taylor, supra, at 287.) The Court of Appeals went on to note that "victims of rape will often exhibit peculiar symptoms — like a fear of men — that are not commonly exhibited by victims of other sorts of trauma” (supra [citations omitted]). Nothing in the peculiar reactions of male victims of sexual assault places them outside the medical definition of posttraumatic stress disorder or diminishes the validity of the conclusion that a syndrome of male sexual victimization is accepted in the scientific community. The scientific literature amply supports the conclusion that expert testimony regarding sexual assaults against men comes within the ambit of the holding in Taylor.
Although the court need not reach the equal protection issue raised by defendant (Matter of Syquia v Board of Educ., 80 NY2d 531, 535), the conclusion drawn herein is consistent with the trend away from gender-based classifications.[10] In short, legal authorities, scientific writings, constitutional doctrine and logic all favor acceptance of the principle that expert testimony concerning rape trauma syndrome as applied to male victims is scientifically reliable and may, when appropriate, be admitted to aid a jury in understanding the sequelae of sexual assault against a man. Accordingly, no Frye hearing is needed and the People’s motion is denied.

. Frye v United States, 293 F 1013.

. A more exact description might be "male sexual assault trauma syndrome” or "male sexual victimization syndrome” since under New York law only women can be victims of rape in the first degree. (Penal Law § 130.35.)

. The parties disagree as to whether the evidence of male rape trauma syndrome will be applicable to one or both counts of the indictment. This issue and all questions as to the qualifications of defendant’s expert as well as questions of admissibility or limitations on the proposed testimony are to be resolved at trial.

. Cf., Daubert v Merrell Dow Pharms., 509 US 579, which rejects the Frye requirement in Federal courts and holds that the "general acceptance rule” is superseded by the Federal Rules of Evidence.

. But see, Dahl v State, 1995 WL 351686 (Minn), where in 1995 a Minnesota appellate court approved the use of expert psychological testimony with regard to characteristics exhibited by child victims of sexual abuse.

. These figures refer to victims age 12 or older and are based on a redesigned questionnaire which captured more incidents of violence than did older methodology. (See, Schafran, Op-Ed, NY Times, Aug. 26,1995, at 19, col 2.)

. Only 1 in 10 men report their sexual victimization according to a study reported in Isely, Adult Male Sexual Assault in the Community: A Literature Review and Group Treatment Model (Rape and Sexual Assault III, A Research Handbook 161 [Burgess ed 1991]). (See also, Mezey and King, The Effects of Sexual Assault on Men: A Survey of 22 Victims, 19 Psychological Medicine 205, 207 [1989]; Rochman, Silent Victims: Bringing Male Rape Out of the Closet, The Advocate: The National Gay and Lesbian News Magazine, July 30, 1991, at 38, 40.)

. It is noteworthy that an earlier version of the Diagnostic and Statistical Manual of Mental Disorders cited in People v Taylor (supra, at 287) listed rape as a stressor in lieu of the broader term sexual assault.

. See, e.g., People v Liberta, 64 NY2d 152, 173, cert denied 471 US 1020 (females not exempt from criminal liability for forcible rape under Penal Law § 130.35); People v Reilly, 85 Misc 2d 702 (sodomy statute, Penal Law § 130.50, construed as gender neutral); Matter of Jessie C., 164 AD2d 731, appeal dismissed 78 NY2d 907 (Penal Law § 130.20 [1] definition of sexual misconduct unconstitutionally underinclusive because directed at males only); accord, People v Dieudonne, 143 Misc 2d 559; see also, statutory rape statutes (Penal Law §§ 130.25, 130.30, made gender neutral by L 1987, ch 510, §§ 1, 2.) According to a 1995 table of statutes compiled by the National Victim Center in Arlington, Virginia, only Alabama, Georgia, Idaho, Kansas, Mississippi and New York do not have a gender neutral statute for forcible rape.