OPINION OF THE COURT
Robert J. McDonald, J.
*315 Defendant is charged by indictment with the crimes of criminal possession of stolen property in the third degree (Penal Law § 165.50); criminal possession of stolen property in the fourth degree (Penal Law § 165.45 [5]); criminal mischief in the fourth degree (Penal Law § 145.00 [1]); and unauthorized use of a vehicle in the third degree (Penal Law § 165.05 [1]). It is alleged that on September 24, 1998, the defendant was in possession of a 1991 Toyota bearing New Jersey license number KM760J, stolen September 23, 1998, in the rear of 91-23 109th Street, Queens, New York. Specifically, that defendant had constructive possession of the garaged vehicle which was seized upon the execution of search warrant No. 744-98.
On April 15, 1999, a hearing “to controvert the search warrant” and suppress statements was held pursuant to defendant’s request for a Mapp/Dunaway /Huntley hearing.[1]
At the conclusion of the hearing, defendant moved for a Frye hearing (see, Frye v United States, 293 F 1013 [DC Cir 1923]), to determine the reliability of the LoJack which was the basis for the search warrant and the supporting affidavit of Police Office Thomas J. Tower, the only witness who testified at the hearing.
On September 24, 1998, at 10:15 a.m., Police Officer Thomas Tower of the Queens Auto Larceny Unit picked up a LoJack tracking signal. Police Officer Tower had participated in a four-day course dealing with the operation of the LoJack tracking device which was in his radio motor patrol car (RMP). After receiving the signal, the officer was able to ascertain many details about the stolen car he was looking for including year, make, model and color. That signal is activated only when a car is reported stolen and the “hit” enabled Police Officer Tower to locate the exact whereabouts of the car by reading the strength of the signal emitted. This brought Police Officer Tower to the exact location from where the signal was emitted, which led the police down a common driveway into the backyard of 97-23 109th Street in Queens County. There is no Payton problem because defendant cannot be said to have a legitimate expectation of privacy over a joint alleyway (People v Kozlowski, 69 NY2d 761; People v Cunningham, 170 AD2d 524; People v Maltese, 149 AD2d 626). Upon entry into the backyard, the police were able to observe, through a broken garage door missing a one-foot square panel, a red 1991 Toyota with New Jersey registration from which the LoJack signal was emitted *316 and which matched the description of the stolen car he was searching for (see, Matter of Lahey v Kelly, 71 NY2d 135). Simply peering through the opening in a garage door does not constitute a search, whereas a physical intrusion into an area otherwise hidden might well be an impermissible intrusion (United States v Place, 462 US 696; People v Sullivan, 29 NY2d 69; People v Alberti, 111 AD2d 860). The police officer was entitled to view what was exposed to public view (James v United States, 418 F2d 1150; People v Sciacca, 64 AD2d 677).
After making a physical check and confirming the accuracy of the LoJack signal the officer obtained a search warrant which resulted in the seizure of the vehicle (People v Arnau, 58 NY2d 27; People v Arminio, 104 AD2d 995; People v Teribury, 91 AD2d 815, 816). The likelihood that the stolen car would be recovered was sufficient to justify the issuance of the warrant (People v Teribury, 91 AD2d 815).
A Frye hearing is held solely to determine the admissibility of scientific evidence at the trial of a case (United States v Williams, 583 F2d 1194, 1198; People v Wesley, 83 NY2d 417; People v Middleton, 54 NY2d 42).
In the instant case, a Frye hearing is not appropriate because any testimony dealing with the question of defendant’s possession of this stolen automobile is not dependent on the introduction of any scientific testimony.[2] The issue as to the usé of Lo-Jack is entirely separate from the issue of defendant’s guilt.
The vehicle’s owner and a private corporation contracted to have the LoJack system installed for the purpose of recovery of the owner’s car. The installation of such a monitor, as long as it was installed simply to enable the police to locate a car, without more, would not involve defendant’s Fourth Amendment rights {see, United States v Knotts, 460 US 276, 284-285).
The LoJack system operates by transmitting a radio signal from the stolen car which is “read” by a receiver, paid and owned by the LoJack Corporation, installed in the police car. The receiver tracks the path of the radio signal emitted from its source installed in the owner’s car.
The issue as to the nature of the scientific evidence which was involved never arose. The quantum of proof necessary to obtain the search warrant is probable cause based upon the credibility of the affiant and not the admissibility of the LoJack alarm (see, People v Hanlon, 36 NY2d 549, 559).
*317 The situation is not dissimilar from one in which the affiant relies on an informant.
The affiant simply sets forth the reasons why he relies on the credibility of the informant. The court then relies on the affiant’s assertions. It is only when the affiant knowingly relied on an unreliable informant that the warrant is subject to attack.
In any case, the reliability of the LoJack system is clearly established. The question as to its infallibility is not relevant (United States v Williams, 583 F2d 1194, 1198, supra). The question is simply whether the system has been found to be generally acceptable (see, People v Yates, 168 Misc 2d 101). Here, the system is clearly generally accepted since LoJack employs nothing more sophisticated than radio communications emitted from a source to a receiver, which in this case was located in a police car (see, People v Persaud, 244 AD2d 577, Iv denied 91 NY2d 976; People v Roraback, 242 AD2d 400, Iv denied 91 NY2d 879; People v DiNonno, 171 Misc 2d 335 [App Term, 2d Dept 1997]).
“[I]f the evidence does not involve new methods of proof or new scientific principles, then the Frye inquiry is not necessary” (State v Hayden, 950 P2d 1024, 1026 [Wash Ct App 1998]). While the probable cause was based on a radio transmission, the issuance of the warrant and the hearing held herein clearly demonstrated that the police actions were based on the requisite knowledge of the police officer affiant (People v Rosario, 78 NY2d 583, cert denied 502 US 1109; People v Weddington, 192 AD2d 750, after remand 199 AD2d 687, Iv denied 83 NY2d 859).
At the hearing, the People were obligated to demonstrate that the issuing Magistrate had before her facts and circumstances presented under oath which provided probable cause (People v Bartolomeo, 53 NY2d 225). The factors to be considered include the source of information, the manner acquired, the expertise of the officer, the extent to which the information was verified, and the nature of the crime (People v Hanlon, 36 NY2d 549, supra). This is because under the Fourth Amendment to the Federal Constitution, search warrants may be issued only upon probable cause, the determination of which rests on the particular facts and circumstances presented to the Magistrate at the time of the warrant application (CPL 690.40 [2]; People v Nieves, 36 NY2d 396).
The reason why the introduction at trial of scientific evidence is governed by the Frye threshold of reliability is that *318 jurors may give undue weight to scientific testimony. However, in the instant case, the LoJack[3] testimony deals solely with the recovery of the subject vehicle and not with any proof as to defendant’s criminal responsibility for its theft (United States v Bailer, 519 F2d 463). The LoJack was installed solely for the purpose of warrantless monitoring and revealed nothing in this case beyond that which could have been obtained visually as long as there is no trespass (see, United States v Karo, 468 US 705, reh denied 468 US 1250; People v Jackson, 65 NY2d 265; People v Often, 163 AD2d 890, affd 78 NY2d 1089; People v Dunn, 155 AD2d 75, affd 77 NY2d 19, cert denied 501 US 1019).
Frye addresses merely the admissibility of evidence and not its weight, which is for the jury. The test the court is obliged to consider is merely whether the proffered testimony is generally accepted as reliable (People v Hughes, 59 NY2d 523, after remand 72 NY2d 1035, cert denied 492 US 908). Whether a Frye hearing is required is a matter directed to the court’s discretion (People v Cronin, 60 NY2d 430, 433; De Long v County of Erie, 60 NY2d 296, 307).
Accordingly, defendant’s oral motion for a Frye hearing is denied.

. That motion was held and decided on April 15, 1999.

. Giannelli, The Admissibility of Novel Scientific Evidence, 80 Colum L Rev 1197 (Oct. 1980).

. Ayres and Levitt, Measuring Positive Externalities From Unobservable Victim Precaution: An Empirical Analysis of LoJack, Q J of Econ (Feb. 1998).