OPINION *Page 2 
{¶ 1} Appellant Randy Hawker appeals the denial of his motion to suppress following his convictions in the Licking County Municipal Court for OVI, Reckless Operation, Expired Licenses, Fleeing and Eluding, Resisting Arrest and Menacing.
 {¶ 2} Appellee is State of Ohio.
 STATEMENT OF THE FACTS AND CASE {¶ 3} On July 14, 2006, Appellant Randy Hawker was arrested and charged with OVI, in violation of R.C. § 4511.19, Reckless Operation, in violation of R.C. § 4511.20, Expired License, in violation of R.C. § 4507.09, Fleeing and Eluding, in violation of R.C. § 2931.331, Resisting Arrest, in violation of R.C. § 2921.33 and Menacing, in violation of R.C. § 2903.22.
 {¶ 4} On July 17, 2006, Defendant-Appellant entered Not Guilty pleas to all charges.
 {¶ 5} On August 21, 2006, Defendant-Appellant filed a Motion to Suppress.
 {¶ 6} On December 5, 2006, the Village of Hebron filed a Memorandum Contra to the Motion to Suppress and Dismiss.
 {¶ 7} On December 12, 2006, an Oral Hearing was held on the Motion to Suppress. The Village of Hebron presented evidence from four (4) witnesses at said Suppression Hearing.
 {¶ 8} The first witness was Michael McFarland who testified that he made the initial call to the police due to a noise disturbance involving a four-wheeler on Hamilton Avenue (T. at 7). Mr. McFarland then went to his neighbor Rick Orr's house, where he saw Appellant come out of the woods on the four-wheeler (T. at 8). Mr. McFarland then *Page 3 
observed Appellant fleeing the police cruiser, which had its lights and sirens on. He stated that he next heard the police one street over yelling at Appellant that he was under arrest and to get on the ground. (T. at 9). According to Mr. McFarland, the police officer was clearly in pursuit of Appellant when he drove the four wheeler on Hamilton Avenue and then into the woods. (T. at 16).
 {¶ 9} The second witness, Rick Orr, also saw Appellant operating the four-wheeler and then also saw Appellant coming out of the woods twenty-minutes later. (T. at 17-18). Mr. Orr then observed Appellant speed by his residence, make a U-turn and accelerate past him again with the Hebron police cruiser following behind him with lights and sirens activated. (T. at 19). According to Mr. Orr, it was obvious that the police were signaling to Appellant to pull over while he was operating the four-wheeler on Hamilton Avenue. (T. at 22).
 {¶ 10} The third witness, Officer Shanaberg, testified that he responded to the report from Mr. McFarland and met with him to obtain more information about the Appellant on the roadway and in the nearby woods. (T. at 26-27). Officer Shanaberg stated that he parked off of Hamilton Avenue and waited for Appellant, who later came speeding up Hamilton Avenue, locking up his brakes when he saw the police cruiser and then turning around and speeding away on the four-wheeler down Hamilton Avenue back towards the woods. (T. at 27-28). Officer Shanaberg followed Appellant on foot into the woods and then contacted Officer Howell to assist him in trying to locate Appellant, whom he described as a male with a shaved head. He also provided Officer Howell with information on the direction Appellant was headed. (T. at 31-32). While still on foot tracking Appellant, Officer Shanaberg, hearing Officer Howell yelling at the *Page 4 
Appellant, ran to that location, and identified Appellant as the same person he observed on the four-wheeler. (T. at 33).
 {¶ 11} The fourth witness, Officer Howell, testified that Officer Shanaberg had called him regarding Appellant and his actions in running from him on the four-wheeler. He stated that Appellant was described to him as a male with a shaved head operating the four-wheeler out of the woods area near Westview and Kelly Drive. (T. at 50). Officer Howell arrived in the area, parked his cruiser and started walking the area streets looking for Appellant and/or the four-wheeler. Officer Howell testified that he observed a man in a garage at 1069 Kelly Drive attempting to move something. He stated that he first observed this from the sidewalk at the driveway of 1069 Kelly Drive, looking through the garage door windows. He stated that he then walked up the driveway to look closer in the garage windows, at which point the officer observed Appellant attempting to move a four-wheeler by the handlebars. (T. at 51). Thereafter, Officer Howell ordered the Appellant to come out of the garage. In response, Appellant threw a tarp or blanket over the four-wheeler, ducked down and exited the garage through a door leading into the house. (T. at 53). Officer Howell noted that he could see the four-wheeler, and that it appeared wet and had grass and mud on its wheels. (T. at 54).
 {¶ 12} After hearing the evidence presented, the trial court denied the Motion to Suppress pursuant to an oral decision from the bench and a Judgment Entry filed on December 12, 2006.
 {¶ 13} In so ruling, the trial court found that Officer Shanaberg was in "hot pursuit" of Appellant after he observed Appellant on the four-wheeler and he attempted *Page 5 
to elude said officer. The Court further found that the officer elicited assistance from Officer Howell, who proceeded to the area and started looking around on foot. The trial court went on to find that the police may observe through windows or open doors things which would not violate a protected expectation of privacy and, therefore, denied the Motion to Suppress.
 {¶ 14} On January 4, 2007, Appellant entered pleas of No Contest to all charges. The trial court accepted the No Contest pleas and found Appellant guilty on all charges. The trial court then sentenced the Appellant.
 {¶ 15} Appellant timely appealed, assigning the following error for review:
 ASSIGNMENT OF ERROR {¶ 16} "I. THE MUNICIPAL COURT ERRED IN DENYING THE APPELLANT, RANDY HAWKER'S MOTION TO SUPPRESS BY FINDING THAT THE SEARCH OF THE APPELLANT'S HOME WAS NOT IN VIOLATION OF HIS FOURTH AMENDMENT RIGHTS BASED ON THE DOCTRINE OF HOT PURSUIT AND THAT THE APPELLANT DID NOT HAVE REASONABLE EXPECTATION OF PRIVACY-IN HIS ATTACHED GARAGE DUE TO GARAGE WINDOWS."
 I. {¶ 17} In his sole assignment of error, Appellant argues that the trial court erred in denying his motion to suppress. We disagree.
 {¶ 18} There are three methods of challenging on appeal a trial court's ruling on a motion to suppress. First, an appellant may challenge the trial court's finding of fact. Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. Finally, an appellant may argue the trial court has *Page 6 
incorrectly decided the ultimate or final issue raised in the motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in the given case. State v. Curry (1994), 95 Ohio App.3d 93, 96; State v.Claytor (1993), 85 Ohio App.3d 623, 627; State v. Guysinger (1993),86 Ohio App.3d 592.
 {¶ 19} In the instant appeal, appellant's challenge of the trial court's ruling on his motion to suppress is based on the third method. Accordingly, this Court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in this case.
 {¶ 20} Appellant argues that the trial court erred in not finding that the officers conducted an illegal search of his home.
 {¶ 21} The trial court, in its decision made from the bench, held that the warrantless search in the case sub judice was justified based on both the "plain view" doctrine and the "hot-pursuit" exception. We shall address the issue of plain view or open view exception first as we find it to be dispositive.
 {¶ 22} The Fourth Amendment to the United States Constitution and Section 14, Article I, Ohio Constitution, prohibit the government from conducting unreasonable searches and seizures of persons or their property. Terry v. Ohio (1968), 392 U.S. 1, 88 S.Ct. 1868,20 L.Ed.2d 889; State v. Andrews (1991), 57 Ohio St.3d 86, 87, 565 N.E.2d 1271. Warrantless searches "are per se unreasonable under theFourth Amendment-subject only to a few specifically established and well-delineated exceptions." Katz v. United States (1967), 389 U.S. 347,357, 88 S.Ct. 507, 19 L.Ed.2d 576. *Page 7 
 {¶ 23} Where there is no search warrant, the State has the burden of showing that a search comes within one of the judicially recognized exceptions: (a) A search incident to a lawful arrest; (b) consent signifying waiver of constitutional rights; (c) the stop-and-frisk doctrine; (d) hot pursuit; (e) probable cause to search, and the presence of exigent circumstances; or (f) the plain-view doctrine.State v. Akron Airport Post 8975 (1985), 19 Ohio St.3d 49,482 N.E.2d 606, at syllabus.
 {¶ 24} As stated above, the trial court found that the plain-view doctrine applied in the instant case. Appellant argues no illegal activity drew the officer's attention to his garage, the officer did not follow Appellant to his house and there was no emergency.
 {¶ 25} Upon review, we find that the Ohio Supreme Court's recent decision in State v. Buzzard, 112 Ohio St.3d 451, 2007-Ohio-373, is analogous to the case sub judice. In Buzzard, the Court was determining whether the Fourth Amendment required the police to obtain a warrant before looking through a small opening in a locked double door of a residential garage. The Court determined that it did not. It explained that the actual subjective expectation of privacy must be counterbalanced by objective reasonableness. Buzzard,112 Ohio St.3d 451, ¶ 20. The Court explained that the detective had followed the tracks from the scene of the burglary directly to the doors of the garage. The Court stated that nothing before it suggested that the garage was used by the suspect for any "intimate activity associated with the `sanctity of a man's home and the privacies of life.'" Id.
 {¶ 26} "Although society generally respects a person's expectations of privacy in a dwelling, what a person chooses voluntarily to expose to public view thereby loses its Fourth Amendment protection. SeeCalifornia v. Ciraolo, 476 U.S. 207, 213, *Page 8 106 S.Ct. 1809, 1812-13, 90 L.Ed.2d 210 (1986). Generally, the police are free to observe whatever may be seen from a place where they are entitled to be.Florida v. Riley, 488 U.S. 445, 449, 109 S.Ct. 693, 696, 102 L.Ed.2d 835
(1989)." United States v. Fields (C.A.2, 1997), 113 F.3d 313, 321. Simply put, the Fourth Amendment does not itself "draw the blinds the occupant could have drawn but did not." State v. Smith (1962),37 N.J. 481, 496, 181 A.2d 761. Id.
 {¶ 27} The Supreme Court went on to explain:
 {¶ 28} "This understanding of the Fourth Amendment is expressed in the plain-view, or open-view, doctrine. The doctrine embodies the understanding that privacy must be protected by the individual, and if a police officer is lawfully on a person's property and observes objects in plain or open view, no warrant is required to look at them.Horton v. California (1990), 496 U.S. 128, 134-137, 140-142,110 S.Ct. 2301, 110 L.Ed.2d 112.
 {¶ 29} "Other courts have also held that it is constitutionally permissible for a police officer to look through fortuitous apertures in garages without a search warrant. See, e.g., State v. Bobic (2000), 140 Wash.2d 250, 259-260, 996 P.2d 610 (holding that there was no search and no Fourth Amendment violation when police officer looked through a small, preexisting hole in the wall separating two commercial storage units and observed contraband); People v. Cortorreal (1999),181 Misc.2d 314, 316, 695 N.Y.S.2d 244 ("Simply peering through the opening in a garage door does not constitute a search * * * "); People v. SuperiorCourt of Los Angeles Cty. (1973), 33 Cal.App.3d 475, 481,109 Cal.Rptr. 106 ("The condition of the premises [cracks in the door of the garage] which facilitated the ability of the officers to observe the items in the garage *Page 9 
negated any exhibition of the defendant's reasonable expectation of privacy"); State v. Crea (1975), 305 Minn. 342, 343-344, 233 N.W.2d 736
(no Fourth Amendment violation when police find stolen snowmobiles after following snowmobile tracks to a basement door and shining a flashlight into a basement window while other officers peer into the garage through a hole in a window covering and a gap in the door and see a stolen snowmobile in the garage); United States v. Wright (C.A.D.C.1971),449 F.2d 1355, 1356, 1362, 1366 (no constitutional violation when a police officer, with the aid of a flashlight, looks into a garage through an opening in the closed, locked doors that was one-half inch wide and eight inches long). We find that authority persuasive in this context.
 {¶ 30} "The detective in this case followed tracks from the scene of the burglary directly to the doors of the garage. The trial court rejected evidence that the police had created the gap in the door. SeeUnited States v. Mankani (C.A.2, 1984), 738 F.2d 538, 544 (noFourth Amendment violation occurred when law-enforcement agent listened to conversations in adjoining hotel room through "fortuitous" hole in base of common wall, noting that "the presence of a visible door, crack or opening in a wall adjacent to another hotel room * * * should suggest to the average person that his or her privacy may be limited"). There is nothing before us to suggest that the garage was used by the appellee for any "intimate activity associated with the `sanctity of a man's home and the privacies of life.'" Dunn, 480 U.S. at 300, 107 S.Ct. 1134,94 L.Ed.2d 326, quoting Boyd v. United States (1886), 116 U.S. 616, 630,6 S.Ct. 524, 29 L.Ed. 746. Here, the viewing took place in front of the garage, where there is a diminished expectation of privacy. *Page 10 United States v. Titemore (C.A.2, 2006), 437 F.3d 251, 259, citingUnited States v. Taylor (C.A.4, 1996), 90 F.3d 903, 908-909."
 {¶ 31} In applying Buzzard, supra, to the instant case, we find that if an officer was permitted to look through the crack in a residential garage door without violating the homeowners Fourth Amendment Rights, it stands to reason that the officer in the situation presented in the case at hand did not violate Appellant's Fourth Amendment Rights when he looked through a garage window. Considering that the windows were not tinted or covered in any way, any subjective expectation of privacy counterbalanced by objective reasonableness indicates there was noFourth Amendment violation. Accordingly, this assignment of error lacks merit.
 {¶ 32} Based on the above, we find that we do not need to address Appellant's argument that the "hot pursuit" exception was not applicable in the instant case.
 {¶ 33} Appellant's sole assignment of error is overruled.
 {¶ 34} For the reasons stated in the foregoing opinion, the judgment of the Municipal Court of Licking County, Ohio, is affirmed.
 Wise, J., Gwin, P. J., and Edwards, J., concur. *Page 11 
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Municipal Court, Licking County, Ohio, is affirmed. Costs assessed to appellant. *Page 1