988 F.2d 122
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Ivan Von STAICH, Petitioner-Appellant,
v.
Robert G. BORG, Respondent-Appellee.
 No. 91-56517.
 United States Court of Appeals, Ninth Circuit.
 Submitted Jan. 8, 1993.*
Decided March 3, 1993.
 
 Appeal from the United States District Court for the Central District of California; No. SACV89-848-JSL, J. Spencer Letts, District Judge, Presiding.
 
 
 1
 C.D.Cal.
 
 
 2
 AFFIRMED.
 
 
 3
 Before CANBY, WILLIAM A. NORRIS, Circuit Judges, and TANNER**, Senior District Judge.
 
 
 4
 MEMORANDUM***
 
 
 5
 Ivan Von Staich, a California state prisoner, appeals pro se the denial of his 28 U.S.C. § 2254 habeas corpus petition. He contends that (1) the trial judge improperly admitted evidence, (2) his counsel was ineffective, (3) the jury instructions deprived him of due process, and (4) he is entitled to a new trial on the basis of newly discovered evidence. We review the denial of the habeas corpus petition de novo, Thomas v. Brewer, 923 F.2d 1361, 1364 (9th Cir.1991), and we affirm.
 
 
 6
 * Appellant first contends that the trial court deprived him of a fair trial by admitting evidence of his prior incarceration in federal prison. We disagree.
 
 
 7
 In order to obtain federal habeas corpus relief, petitioner must demonstrate that the admission of the disputed evidence violated his right to due process by "so fatally infect[ing] the proceedings as to render them fundamentally unfair." Jammal v. Van de Kamp, 926 F.2d 918, 919 (9th Cir.1991). In this case, the admission of evidence regarding appellant's incarceration did not render his trial fundamentally unfair. The evidence was introduced to show that, although appellant had made threats against Cynthia and Robert Topper, he was unable to carry out these threats because he was incarcerated. It was entirely permissible for the jurors to infer from this evidence that appellant's earlier threats had been sincere and that his lethal attack was premeditated. Moreover, the trial court instructed the jury several times that it could consider this evidence only to determine whether appellant had access to the victims during the period he was threatening them. Accordingly, the admission of this evidence did not rise to the level of a due process violation that would entitle appellant to habeas corpus relief.
 
 II
 
 8
 Appellant next argues that his trial counsel was ineffective because he failed to call Kenny Morgan and Danny Staich as defense witnesses, despite his request that they be called to testify. He asserts that Kenny and Danny could have testified (1) that the victim, Cynthia Bess Topper, telephoned appellant on the evening immediately prior to the attack and (2) that appellant told them that Cynthia wanted him to visit her and pick up some of his belongings that she still had. Appellant claims that his trial attorney relied on a false report from a defense investigator in deciding not to call Kenny Morgan, and that no one even interviewed Danny Staich.
 
 
 9
 To obtain reversal of a conviction, appellant must prove (1) that counsel's performance fell below an objective standard of reasonableness, and (2) that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Strickland v. Washington, 466 U.S. 668, 687-88, 692 (1984).
 
 
 10
 In this case, appellant has failed to demonstrate prejudice. For even if we assume (1) that Kenny and Danny are credible and that they would have testified as appellant contends, (2) that their statements regarding who was on the phone and what appellant told them about the conversation would have been admissible under an exception to the hearsay rule, (3) that the jury would have believed their testimony, (4) that the investigator's report was in fact false, and (5) that Danny Staich was never interviewed, appellant still fails to explain how counsel's failure to call Kenny and Danny to the witness stand affected the outcome in his case.
 
 
 11
 At most, their testimony would have established only that one of the victims called appellant and asked him to come to the house on the night of the attack. This could have supported an inference that appellant had an innocent purpose in mind when he went to the home that evening, and, consequently, that the killing and attempted killing were not the result of premeditation and deliberation. But appellant was convicted of second-degree murder--not first-degree murder--and thus, even without this testimony, the jury concluded that the killing was not the result of premeditation or deliberation. Accordingly, because we hold that appellant suffered no prejudice by counsel's failure to introduce this evidence at trial, we reject his claim of ineffective assistance.
 
 III
 
 12
 Appellant contends that the trial court gave erroneous and ambiguous jury instructions that deprived him of his right to a fair trial. Appellant makes two separate claims in this regard, both of which we find insufficient to warrant a new trial.
 
 
 13
 First, he argues that the trial court erroneously instructed the jury that the mental state necessary for the crime of attempted murder is malice aforethought, rather than a specific intent to kill. We agree that the instructions on the mental element of attempted murder were ambiguous, and that they likely were error under California law. Nevertheless, we do not think that these faulty instructions so infected the entire trial as to render it fundamentally unfair. Van Pilon v. Reed, 799 F.2d 1332, 1342 (9th Cir.1986).
 
 
 14
 It is apparent that the jury rejected the claim that appellant was merely trying to defend himself against Cynthia. Because appellant's repeated clubbings to Cynthia's head were hard enough to crack her skull and cause her severe brain injuries, it is highly likely that the jury found that appellant had acted with a specific intent to kill Cynthia. Although the jury instructions on the attempted murder charge were not perfect, they did not cause such confusion as to deprive appellant of his constitutional right to due process.
 
 
 15
 Second, appellant argues that the trial court gave ambiguous instructions on voluntary manslaughter when it gave both CALJIC No. 8.11--which defined express malice as a manifested intention to kill--and CALJIC No. 8.40--which defined voluntary manslaughter as an unlawful killing with the intent to kill, but without malice aforethought.
 
 
 16
 We recognize that there is an apparent contradiction between the two instructions. But the trial judge adequately cleared up any potential confusion. The judge properly told the jury that if they found that petitioner had formed the intent to kill upon a sudden quarrel, in the heat of passion, or in the honest but reasonable belief that he needed to defend himself, then the jury was to find him guilty of manslaughter, no murder. Accordingly, there was no violation of due process.
 
 IV
 
 17
 Finally, appellant argues that he should be granted a new trial on the basis of newly discovered evidence--specifically, two declarations from Cynthia Topper which purportedly support his theory of self-defense.
 
 
 18
 We are not quite sure, after Herrera v. Collins, 61 U.S.L.W. 4108 (1993), what the law now is regarding claims of newly discovered evidence on federal habeas. Although a majority of justices on the Court agreed that a petitioner would be entitled to a new trial upon a "truly persuasive demonstration" of actual innocence, id. at 4115, they did not agree upon a legal standard by which such a "truly persuasive demonstration" is to be measured. See id. at 4115 (Rehnquist, C.J., opinion of the court, in which O'Connor, Scalia, Kennedy, and Thomas, JJ., joined) ("the threshold showing ... would necessarily be extraordinarily high"); id. at 4119 (White, J., concurring in judgment) ("petitioner would at the very least be required to show that based on proffered newly discovered evidence and the entire record before the jury that convicted him, 'no rational trier of fact could [find] proof of guilt beyond reasonable doubt.' ") (citation omitted); id. at 4122 (Blackmun, J., dissenting, with whom Souter and Stevens, JJ., joined) ("[T]o obtain relief on a claim of actual innocence, the petitioner must show that he probably is innocent."). Nevertheless, we see no need to announce such a standard today. For no matter what standard we adopt, appellant could not obtain relief.
 
 
 19
 The two declarations were both signed under oath; yet they directly contradict one another. In the first declaration, Cynthia states that she has regained her memory, and then she tells a story that roughly mirrors petitioner's statement admitted at trial. In this declaration, she says nothing about plotting to have petitioner kill her husband for the insurance money. But then, over two years later, Cynthia signs a new declaration which contains an admission of guilt, in the vaguest of terms, for "conjur[ing] up this scheme" to "manipulate [appellant] into a position where he must kill my husband or be killed." This declaration contains no explanation concerning how this scheme was arranged, what role petitioner played in its formulation, or why Cynthia was responsible for petitioner's killing of Robert Topper and attempted killing of Cynthia. Nor does it explain why petitioner went to her house armed with a hammer and why he cut the telephone lines.
 
 
 20
 Moreover, both declarations are inconsistent with appellant's own statement to the police indicating that he decided to visit Cynthia on his own and not because she called him. And to add to that, it now appears from the record that the declarant has since recanted both of her declarations in the course of interviews with the attorney general's investigators. This evidence falls far short of a "truly persuasive demonstration" of actual innocence, however that standard might ultimately be refined.
 
 
 21
 AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a) and Ninth Circuit Rule 34-4
 
 
 **
 The Honorable Jack E. Tanner, Senior United States District Judge, Western District of Washington, sitting by designation
 
 
 ***
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3