Roy ALLEYN, Petitioner,

v.

WARDEN, SMITHFIELD STATE PRISON, Attorney General of Pa., District Attorney of Monroe County, Pennsylvania, Respondents.

Civ. No. 92–0072.

United States District Court,
M.D. Pennsylvania.

Jan. 4, 1995.

Roy Alleyn, pro se.

Gwendolyn T. Mosley, Office of Atty. Gen., Harrisburg, PA, James P. Gregor, Stroudsburg, PA, David Walter Skutnik, Effort, PA, Aaron D. Parnes, Office of Atty. Gen., Litigation Section, Harrisburg, PA, for respondents.

## MEMORANDUM

VANASKIE, District Judge.

On January 24, 1992, Roy Alleyn, a.k.a. Andrew Edward Muldowney, presently incarcerated at the State Correctional Institution, Smithfield, Huntingdon, Pennsylvania, filed the above-captioned petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. His *pro se* petition challenges the validity of his 1988 conviction in the Court of Common Pleas of Monroe County, Pennsylvania, for arson and criminal mischief. Alleyn claims that insufficient evidence existed to convict him and that the jury would have held reasonable doubt about his guilt if it had

been presented with evidence and argument that a delayed timing device could have started the fire for which he was convicted.[1]

Careful review of the state court record compels the conclusion that the evidence was sufficient to convince a rational trier of fact of Alleyn's guilt. Thus, Alleyn is not entitled to habeas corpus relief based on the alleged insufficiency of the evidence. *See Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). With respect to Alleyn's claim based on the failure of the jury to be presented with evidence concerning a delayed incendiary device, Alleyn has not presented a truly persuasive demonstration of innocence, as the Supreme Court has suggested is required when a 'new evidence' claim is presented. *See Herrera v. Collins,* ──── U.S. ────, 113 S.Ct. 853, 122 L.Ed.2d 203 (1993).[2] Thus, Alleyn's petition for habeas corpus relief on this ground must also be denied.

## I. FACTUAL BACKGROUND

The arson fire for which Alleyn was convicted occurred on February 28, 1988, burning to the ground a single-story house owned by Ralph and Theresa Vecchio in Minisink Hills, Monroe County, Pennsylvania. Volunteer firemen were individually notified of the fire by a "fire pager" and began to arrive at the scene shortly after 4:30 a.m. (Tr. at 28, 65.) Daniel J. Dorwart III, who worked as a security guard for Shawnee Stables, which was located near the scene of the fire, also learned from a fire pager that the Vecchio residence was on fire. (Tr. at 65.)

The firemen and Dorwart independently observed footprints in the freshly fallen snow on the Vecchio property and the Shawnee Stables property. The firemen observed that two sets of footprints at the Vecchio property led away from the front porch of the residence and through a hole in a fence

---

1. Alleyn's petition asserted three grounds for relief: ineffective assistance of counsel; insufficient evidence, which was based upon the assertion that "new evidence of innocence brought up after trial showed reasonable doubt of guilt"; and cruel and unusual punishment based upon double celling. (Dkt. Entry # 1 at 5–6.) Alleyn's subsequent filings indicate that he intends only to advance his claim of insufficient evidence.

2. It should be noted that Alleyn, who represented himself at trial with the assistance of a court-appointed advisor, did not present any evidence to the jury concerning a delayed incendiary device.

on the property. Dorwart observed that the set of footprints on the Shawnee Stables property came from the scene of the fire. Dorwart tracked that set directly back to the scene of the fire. He also followed the prints away from Shawnee Stables, which led him to a bridge over a creek—the Brodhead Creek bridge—near the stables.

Dorwart then returned to the fire scene and informed Frank Primrose, the fire chief, of the tracks. Primrose tracked the prints with another fireman from under the bridge across an open field and, ultimately, to railroad tracks, which the prints began to follow. Primrose then summoned the state police. Trooper Michael Hartley arrived on the scene at about 6:00 a.m. Shortly thereafter, Primrose, Hartley, Trooper Harry Van Vliet, and fireman Douglas Witcraft continued tracing the tracks, which led them to "a small shanty that probably at one time had been a switch control or light control operation for the railroad when it operated." (Tr. at 256.)

The tracks then left the railroad bed and proceeded in a westerly direction. After continuing to follow the tracks for a distance, the group observed a steel pipe which had smoke coming from it. The footprints to the pipe matched the prints they were tracking. The group found Alleyn in the pipe, and he was arrested.

## II. PROCEDURAL HISTORY

As noted above, Alleyn filed his petition on January 24, 1992. On June 3, 1992, the Monroe County District Attorney, by David W. Skutnik, filed a Response to Alleyn's Petition and a memorandum in support of the Response. (Dkt. Entry nos. 11–12.) The Pennsylvania Attorney General also filed a Response on June 3, 1992. (Dkt. Entry # 14.) Alleyn filed his Traverse on June 11, 1992.

By Order dated August 6, 1992, Alleyn was directed to file "a full and complete copy of any and all habeas petitions he filed which are related to instant habeas petition." (Dkt. Entry # 16.)[3] The August 6, 1992 Order further provided that "[t]he *parties* are to file the complete state court record, including all trial and appellate opinions, as well as any and all trial and appellate briefs." Supplementation of the record was to be accomplished within twenty (20) days. (*Id.*)

On August 20, 1992, Alleyn responded to the August 6, 1992 Order, filing with this Court those parts of the state court record that were accessible to him. His response did not include the transcript of his state court trial. Although the Office of the District Attorney of Monroe County, through Attorney David W. Skutnik, had answered the habeas corpus petition on June 3, 1992, the District Attorney's Office did not respond to the August 6, 1992 Order.[4] The District Attorney of Monroe County now contends that it did not respond to the August 6, 1992 Order because the Order required submission of papers by "the parties" and by the "respondents," and the District Attorney's office was not a named respondent.[5] By Order dated June 6, 1993, counsel were directed to file status reports in this matter. (Dkt. Entry # 20.) Unfortunately, it appears that the Clerk did not cause the June 16, 1993 Order to be sent to the District Attorney's office for Monroe County. The Attorney General of Pennsylvania, however, was served with a copy of the June 15, 1993 Order and did submit a status report that was also sent to Assistant District Attorney Skutnik. (Dkt. Entry # 22.) The Attorney General's Status Report indicated that Assistant District Attorney Skutnik had been attempting to locate the file in this matter. Receipt of the Attorney General's Status Report, as well as that filed by Alleyn, (Dkt.

---

3. The habeas corpus petition now pending before this Court appears to be the third federal habeas corpus challenge to Alleyn's 1988 conviction, the first two of which were dismissed for failure to exhaust available state court remedies. With respect to the claims that Alleyn is now presenting, respondents appear to concede that Alleyn has "sufficiently exhausted all state remedies for purposes of federal habeas corpus relief." (Dkt. Entry # 36 at ¶ 6.)

4. The Clerk's Mailing Certificate indicates that a copy of the August 6, 1992 Order was sent to Attorney Skutnik.

5. This assertion seems to be inconsistent with the fact that the District Attorney of Monroe County responded to the habeas corpus petition in June of 1992.

Entry # 21), did not prompt any action from the Monroe County District Attorney. Thus, this matter remained dormant until March 1, 1994, when it was reassigned to me.

On April 21, 1994, Alleyn filed a supplemental brief to his habeas corpus petition, indicating that "only the insufficient evidence issue is [now] being pressed." (Dkt. Entry # 24.) When a review of the record revealed that compliance with the August 6, 1992 Order had not been achieved, I issued an Order under date of June 22, 1994, directing the District Attorney of Monroe County to file, *inter alia*, the complete transcript of all trial proceedings held in connection with Alleyn's conviction. The District Attorney has complied with this Order.[6]

## III. DISCUSSION

### A. Sufficiency of the Evidence

Alleyn argues that the "finding of footprints at the scene of the fire in fresh snow that the [Commonwealth] claimed to have traced to my campsite in the woods is not proof beyond reasonable doubt of my guilt." (Dkt. Entry # 35 at 3.) When a person challenges a jury's verdict on the ground that there was insufficient evidence to support conviction, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979) (emphasis in original). *Accord, Wright v. West*, 505 U.S. 277, 112 S.Ct. 2482, 120 L.Ed.2d 225 (1992). Put another way, Alleyn is entitled to habeas corpus relief only "if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a

reasonable doubt." *Jackson*, 443 U.S. at 324, 99 S.Ct. at 2791–92. The reviewing court must defer to the jury's resolution of conflicts in the evidence since the weighing of evidence is the province of the jury. *Id.* at 326, 99 S.Ct. at 2793.

Viewing the evidence in the light most favorable to the prosecution, it is clear that sufficient evidence was presented to allow *any* rational trier of fact to find that Alleyn was guilty beyond a reasonable doubt with respect to all elements of his arson conviction. Alleyn's arson conviction required the prosecution to prove: (1) that there was a fire; (2) that it was maliciously and willfully set; and (3) that it was set by the defendant. *Commonwealth v. Hardcastle*, 519 Pa. 236, 546 A.2d 1101 (1988). Alleyn does not dispute that the Vecchio residence was maliciously and willfully set on fire. Rather, Alleyn challenges the sufficiency of the evidence that the fire was set by him.

The prosecution presented ten (10) witnesses who observed footprints at the scene of the fire that were tracked directly to Alleyn. For instance, fireman Stephen Carey observed a set of footprints leading to the fire scene and two sets leading away. (Tr. at 30, 32–3, 36.) He testified that the footprints from all three sets matched. (Tr. at 33.) He further testified that the footprints leading away from the fire scene extended through the yard and across the road. (Tr. at 40.)[7]

Security guard Daniel Dorwart testified that he followed the tracks he observed on the Shawnee Stables property from the fire scene to the Brodhead Creek bridge crossing. (Tr. at 67–8.) Primrose testified that after Dorwart took him to the bridge crossing where Dorwart ceased tracking, he tracked the footprints across an open field and to railroad tracks which the prints began

---

6. In a July 8, 1994 letter accompanying the trial transcript, the District Attorney stated: "I am sending you my *only* copy of the Transcript of Testimony of the Andrew Edward Muldowney trial. When you have no further use for it, please return it to my office so that I may keep it on file." [Emphasis in original.] Because Alleyn's petition challenges the sufficiency of evidence presented at his trial, the trial transcript must necessarily become part of the permanent record in this action. The Clerk of Court will be directed to enter a photocopy of the transcript

into the record and return the original to the District Attorney.

7. The testimony of firemen William Edmondson and Mark Carey, who is the brother of Stephen Carey, supports much of Stephen's testimony. Mark Carey also explained that the two sets of prints leading away from the fire scene went to a hole in a fence. (Tr. at 56.) Mark Carey agreed that all sets matched. (Tr. at 57.)

to follow. (Tr. at 97–8.) Primrose, Hartley, Van Vliet, and Witcraft testified about the tracking of the footprints from this point to the discovery of Alleyn.

Hartley testified that after apprehending Alleyn, he compared the impression made by Alleyn's shoes with those tracks that they followed and concluded that they were the same. (Tr. at 258.) Moreover, Trooper John Lazur, accepted as an expert regarding footprints, testified that he personally examined footprints from along the path traced from the scene of the fire to the site of Alleyn's apprehension. (*See* Tr. at 171–72.) Lazur took photographs of those prints, which were admitted into evidence. (Tr. at 174.) Lazur compared the shoes Alleyn wore when he was apprehended with the prints, determining that not only did the sizes match, but that the shoe soles matched and that a design found on the side of the heel of the right shoe matched the unique pattern made in the freshly fallen snow by the right footprint. (Tr. at 179–80.) Furthermore, Lazur testified that plastic which Alleyn had in his left shoe, which stuck out of the shoe, could account for a "dragging" effect found on the snow near the left foot mark of the tracks. (Tr. at 180.)

A rational trier of fact certainly could conclude that the evidence submitted at Alleyn's trial demonstrated beyond a reasonable doubt that Alleyn had been at the Vecchio house shortly before the fire was discovered. This circumstantial evidence was sufficient to support a conclusion, beyond a reasonable doubt, that Alleyn had set the fire.

### B. "New Evidence" Concerning A Delayed Incendiary Device

Alleyn argues:

8. Although Chief Justice Rehnquist delivered the opinion of the Court in *Herrera*, each of the other eight Justices concurred in one of the four separate opinions. This fact partially caused the Court of Appeals for the Ninth Circuit to comment: "We are not quite sure, after *Herrera v. Collins*, ... what the law now is regarding claims of newly discovered evidence on federal habeas." *Von Staich v. Borg*, 1993 WL 55161, 1993 U.S.App. Lexis 4581 (9th Cir. Mar. 3, 1993) (unpublished opinion). As for Alleyn's petition, however, it is clear that no position articulated by any Justice in *Herrera* would support granting

The DA. says I have shown no evidence to prove a delayed candle device was used. But a long burning wax candle is not detectable at a fire site once a big fire gets going. Wax melts by fire and does not burn down into wood like inflamable [sic] liquid.... Some very reasonable doubt is certain here especially with the fact being that no inflmable [sic] liquid was found on defendant. Including smell of said. [Dkt. Entry # 35 at 2, 3.]

Although Alleyn argues that his insufficient evidence argument "includes the delayed time candle device," (dkt. entry # 35 at 1), his argument regarding insufficiency of evidence is analytically distinct from his argument that evidence of a delayed timing device would have introduced reasonable doubt into the jurors' minds. In claiming that the jury should have received evidence that a delayed timing device allegedly could have started the fire, Alleyn argues that evidence not introduced at his trial would have demonstrated his innocence.

The Supreme Court, in *Herrera v. Collins*, — U.S. —, 113 S.Ct. 853, 122 L.Ed.2d 203 (1993), recently addressed a case where a habeas corpus petitioner claimed that newly discovered evidence showed that he was actually innocent.[8] The petitioner in *Herrera* submitted affidavits to dispute his conviction for the murder of a Texas patrol officer. Two affiants swore that the petitioner's brother told them that he killed the officer. *Id.* at —, 113 S.Ct. at 858, 122 L.Ed.2d at 214. A third affiant, the brother's son, swore that he witnessed his father shoot the officer, although the affiant was nine years old at the time of the murder. *Id.*[9]

In the same manner as Alleyn argues in his petition, the petitioner in *Herrera* claimed

his petition for habeas corpus based on the claim that an argument not presented at his trial would have presented reasonable doubt in the minds of the jurors.

9. Despite the affidavits, the evidence adduced at trial proved sufficiently weighty to cause Justice O'Connor, with whom Justice Kennedy concurred, to state: "Petitioner is not innocent, in any sense of the word." *Id.*, at —, 113 S.Ct. at 870, 122 L.Ed.2d at 228.

"that evidence never presented to the trial court proves him innocent notwithstanding the verdict reached at his trial." *Id.* ——, 113 S.Ct. at 860, 122 L.Ed.2d at 216. The *Herrera* petitioner, however, did not, and could not, contend that an independent constitutional violation occurred during his underlying trial. This fact is significant because "[c]laims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding." *Id.* at ——, 113 S.Ct. at 860, 122 L.Ed.2d at 216. Alleyn does not contend that his trial suffered from some constitutional flaw relevant to his claim that he missed an opportunity to present his new theory to the jury. For instance, Alleyn does not argue that a witness was coerced or that tampered evidence was introduced.[10] Rather, Alleyn questions the legitimacy of the jury's determination based on facts not before them. Habeas corpus relief may not be awarded on the basis of Alleyn's unsubstantiated contentions.

■ The Supreme Court in *Herrera*, without deciding, intimated that if evidence is newly discovered, a habeas petitioner possibly could obtain relief by making a "truly persuasive demonstration of 'actual innocence.'" *Id.* at ——, 113 S.Ct. at 869, 122 L.Ed.2d at 227. Alleyn's claim, however, that a theory not presented at trial would have introduced reasonable doubt into the minds of the jurors does not constitute a "truly persuasive demonstration of 'actual innocence.'" Nor has he presented "newly discovered" evidence. Accordingly, Alleyn is not entitled to habeas corpus relief based on his delayed incendiary device theory.

---

10. Alleyn explained in an earlier filing in this case:

I was unable to think of the timing issue at trial because: the overcrowded "3 to a cell" conditions in the county jail hindered my concentration. And because rival fireman at my trial may have used radiodocic [sic] devices to hinder my thoughts. (Dkt. Entry # 17 at 4.)