Robert C. **WHITE**, Petitioner,

v.

John P. **KEANE**, Superintendent, **Respondent.**

No. 98 Civ. 0964 WCC.

United States District Court, S.D. New York.

June 16, 1999.

Robert C. White, Woodbourne, New York, petitioner pro se.

Office of the District Attorney, Sullivan County, Monticello, New York, Stephen F. Lungen, District Attorney, of counsel, for respondent.

## OPINION AND ORDER

WILLIAM C. CONNER, Senior District Judge.

Robert C. White ("petitioner") brings this petition for a writ of habeas corpus under 28 U.S.C. § 2254, seeking to set aside a September 30, 1993 judgment of the County Court of Sullivan County (Vogt, J.), convicting him, after a jury trial, of sodomy in the first degree (sixteen counts), sodomy in the second degree (sixteen counts), and sexual abuse in the first degree (six counts). He was sentenced to ten to thirty years in prison, and is currently incarcerated in the Woodbourne Correctional Facility in Woodbourne, New York. Petitioner contends that his conviction should be overturned because: 1) he was denied his statutory right to a speedy trial pursuant to N.Y.CRIM.PROC.LAW ("CPL") § 30.30; 2) the People failed to turn over *Brady* material regarding exculpatory grand jury testimony of one of the victims until the eve of trial; 3) expert testimony regarding child sexual abuse syndrome should not have been admitted at trial; 4) the trial court erred in failing to grant his motion to set aside the jury's verdict based upon the existence of "new evidence;" and (5) he was denied effective assistance of counsel due to his attorney's failure to move to dismiss the indictment on speedy trial grounds and because of his lawyer's failure to uncover and/or present the "new" evidence at trial. For the following reasons, his § 2254 habeas petition is dismissed.

## BACKGROUND

Petitioner seeks to set aside his conviction based on findings that as a foster parent, he abused numerous children placed in his care by the Sullivan County Department of Social Services. Subsequent to sentencing, petitioner filed an appeal of his conviction to the Appellate Division, Third Department, where he raised each of the claims now raised in this habeas petition. *People v. White*, 229 A.D.2d 610, 645 N.Y.S.2d 562 (N.Y.App.Div.1996). The Appellate Division denied petitioner's appeal related to his *Brady* claim, his claim on the child sexual abuse syndrome testimony, and his claim to set aside the verdict based upon "new evidence." *Id.* As to petitioner's speedy trial claim, the

Appellate Division determined that the matter should be remitted to the County Court for a hearing for further development. *Id.* at 611, 645 N.Y.S.2d 562. A hearing was thus held on September 20, September 27, and November 8 of 1996 on the speedy trial issue and a decision was rendered on December 31, 1996. The court found that the speedy trial claim was without merit. *See* People's Affidavit Ex. C. The matter was then returned to the Appellate Division for reconsideration based upon these findings below, wherein the court also found that the speedy trial claim, and the ineffective assistance claim based upon the speedy trial issue, was without merit. *People v. White,* 238 A.D.2d 619, 655 N.Y.S.2d 700 (N.Y.App. Div.1997). Petitioner's application for leave to appeal to the New York State Court of Appeals was denied on September 16, 1997. *People v. White,* 90 N.Y.2d 944, 664 N.Y.S.2d 762, 687 N.E.2d 659 (1997) (Table). The instant petition was timely filed thereafter.

## I. Speedy Trial Claim

Petitioner was indicted and arraigned on June 5, 1991. The People filed a Notice of Readiness for Trial on June 6, 1991. Following this date, significant delay occurred before petitioner was tried, and trial did not commence until August 16, 1993.[1] This delay forms the basis of petitioner's speedy trial claim under CPL 30.30, which requires the People to be ready for trial within six months of the commencement of a criminal action in which a felony is charged. Petitioner claims that the delay was attributable to the People, specifically that after a visiting judge, on January 17, 1992, granted petitioner's application to inspect the grand jury minutes and stated that "the People will provide minutes to

the Court for review," the People violated CPL 30.30 by not providing these minutes to the court. *See* People's Affidavit Ex. C (quoting from County Court decision). Thus, petitioner claims that although the People announced their readiness for trial within the six-month period required CPL 30.30(1)(a), their postreadiness delay in providing the grand jury minutes violated his right to a speedy trial, and the People are therefore responsible for the delay from January 17, 1992 to August 16, 1993.[2]

We first note that the County Court, after conducting a three-day hearing on this issue, determined that the speedy trial claim had no merit, and the Appellate Division affirmed this decision. *People v. White,* 238 A.D.2d 619, 655 N.Y.S.2d 700. Because this petition was filed after the April 24, 1996 effective date of the Antiterrorism and Effective Death Penalty Act ("AEDPA"), the AEDPA applies. Pub.L. No. 104–132, 110 Stat. 1214; *see Lindh v. Murphy,* 521 U.S. 320, 326, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997); *Robison v. Johnson,* 151 F.3d 256, 258 n. 2 (5th Cir.1998), *cert. denied,* —— U.S. ——, 119 S.Ct. 1578, 143 L.Ed.2d 673 (1999). 28 U.S.C. § 2254(e)(1) states that a determination of a factual issue made by a state court shall be presumed to be correct, and the petitioner bears the burden of rebutting the presumption of correctness by clear and convincing evidence.

However, even if we were not bound by this presumption, our result would be the same; it is clear that the people were not responsible for the delay. In a three-day hearing conducted by the County Court, it was established by the testimony of a secretary, an assistant district attorney, and a judge connected with

---

**1.** Other documents posit the trial date as August 17, 1993, but this variance is of no import.

**2.** Although it unclear from the record, it appears that Appellate Division reviewing this appeal has posited August 16, 1993 as the end-date of the People's alleged postreadiness

delay because either: (1) this was the date the trial court actually requested and received the grand jury minutes or (2) the trial court never reviewed these minutes, and thus the first day of trial is the only logical date upon which to mark the end-date of the trial-readiness delay. *White,* 238 A.D.2d 619, 655 N.Y.S.2d 700.

this case that it was standard procedure for the District Attorney to make the grand jury minutes available to a judge upon request for *in camera* review. *See, e.g.,* Hearing Testimony of Judge Anthony T. Kane at 159–60. It is uncontested that the District Attorney's Office did submit the minutes promptly when requested. However, because of the death of the only sitting judge in the jurisdiction, Sullivan County was subjected to a confusing rotation of visiting judges, assigned to the court in four-week stints. At least five different judges either adjudicated or were scheduled to adjudicate various aspects of petitioner's case and, in the confusion, all failed to request the grand jury minutes. This failure is no way attributable to the People. CPL 30.30 addresses prosecutorial readiness, not readiness by the court. *People v. McKenna,* 76 N.Y.2d 59, 555 N.E.2d 911, 556 N.Y.S.2d 514 (1990). While a " '[d]elay in providing Grand Jury minutes may be properly charged to the People if it can be shown that their action or inaction actually caused the delay,'" *People v. Fitzgerald,* 683 N.Y.S.2d 629, 630 (N.Y.App.Div.1999) (quoting *People v. Dearstyne,* 215 A.D.2d 864, 866, 626 N.Y.S.2d 879 (N.Y.App.Div.1995)), we hold that since the grand jury minutes were promptly transcribed and made available in conformity with custom and practice in Sullivan County, CPL 30.30 was not violated. This delay was caused by the County Court and not the People, and thus petitioner's right to a speedy trial was not violated. *See People ex rel. Franklin v. Warden,* 31 N.Y.2d 498, 294 N.E.2d 199, 341 N.Y.S.2d 604 (1973) (delay due to court congestion); *Fitzgerald,* 683 N.Y.S.2d 629 (no violation of CPL 30.30 since delay in providing grand jury minutes due to the incapacity of the court stenographer).

At the hearing, petitioner also raised the possibility that because the District Attorney was aware or should have been aware that one of the judges assigned to the case would recuse himself from hearing it, the D.A. should have been more proactive in providing a judge with the grand jury minutes. We find that even if the District Attorney was aware that this judge did plan to recuse himself, this did not place upon the D.A. a special onus to break from the standard procedure for the delivery of grand jury minutes and send them *sua sponte.* While the pre-trial handling of petitioner's case may have been most inefficient due to the unexpected death of the only presiding judge in the County Court, this inefficiency is not attributable to the People, and thus petitioner's speedy trial claim must fail.

## II. Brady Claim

Petitioner claims that the People's failure to turn over relevant exculpatory material violated his rights under *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). More specifically, he claims that his constitutional right to a fair trial was violated by the prosecution's failure to turn over, until the evening before the first day of trial, grand jury testimony of one of his alleged victims specifically denying ever being assaulted by the petitioner. For the reasons stated below, we reject petitioner's argument.

 *Brady* requires the prosecution to disclose to an accused exculpatory information that is both favorable and material to guilt or punishment. 373 U.S. at 87, 83 S.Ct. 1194, 10 L.Ed.2d 215. Evidence is material if there is a reasonable probability that, had the evidence been disclosed, the outcome of the proceeding would have been different. *United States v. Bagley,* 473 U.S. 667, 682, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985). A reasonable probability is a "probability sufficient to undermine confidence in the outcome." *Id.* Here, however, the analysis must be somewhat re-phrased, since petitioner does not claim that the People failed to turn over *Brady* material, but only that the People's delay in providing this material violated his rights under *Brady.* In such cases, "When the government delays disclosing exculpatory evidence, the defendant must

show a reasonable probability that an earlier disclosure would have changed the trial's result." *United States v. Dean,* 55 F.3d 640, 663 (D.C.Cir.1995). Because "[n]either *Brady* .... nor any other case requires that disclosure under *Brady* must be made before trial," *United States ex rel. Lucas v. Regan,* 503 F.2d 1, 3 n. 1 (2d Cir.1974), due process simply requires that disclosure must not occur so late as to prevent the defendant from "mak[ing] effective use of it." *United States v. Paxson,* 861 F.2d 730, 737 (D.C.Cir.1988); *see also United States v. McPartlin,* 595 F.2d 1321, 1346 (7th Cir.1979) (relevant question is "whether the disclosure came so late as to prevent the defendant from receiving a fair trial").

■ This rule does not insulate prosecutors from ever violating *Brady* as long as they turn over material sometime before trial commences or before it becomes relevant during the course of the trial. Some *Brady* material "is of such significance that it must be provided to the defendant well in advance of the trial so as 'to allow the defense to use the favorable material effectively in the preparation and presentation of its case.'" *United States v. Green,* 144 F.R.D. 631, 645 (W.D.N.Y.1992) (quoting *United States v. Pollack,* 534 F.2d 964, 973 (D.C.Cir.1976)); *see also United States v. Deutsch,* 373 F.Supp. 289, 290 (S.D.N.Y.1974). Admittedly, the People's failure to promptly turn over the relevant grand jury testimony in this case was wrong.[3] When a victim, whose alleged assault forms the basis for various counts in the indictment specifically testifies before the grand jury that she was never assaulted by the defendant, the materiality of such testimony to the defendant's case is obvious. The People should have provided the petitioner with this testimony well before the eve of trial, since that testimony was given approximately two years prior to the commencement of trial. Nonetheless, we now hold that the People's handling of this evidence, although careless, does not rise to the level of constitutional violation.

Crucial to our assessment is that the petitioner was provided with these minutes before the trial commenced and before that testifying witness took the stand, and petitioner has presented this court with no evidence that his effective use of that evidence was so impacted as "to put the whole case in such a different light as to undermine confidence in the verdict." *Kyles v. Whitley,* 514 U.S. 419, 435, 115 S.Ct. 1555, 131 L.Ed.2d 490(1995). Since no suppression of the evidence occurred here, petitioner's claim is grounded in the unsupported and improbable assertion that "the production was too late to be useful." *United States v. Tarantino,* 846 F.2d 1384, 1416 (D.C.Cir.1988).

Petitioner does not allege, nor does our own analysis allow us to imagine, that the defense strategy would have been altered by earlier knowledge of this evidence. *See, e.g. United States v. Romero,* 54 F.3d 56, 61 (2d Cir.1995). Nor does petitioner allege that the untimely production of this evidence prevented him from uncovering additional evidence related to it. As we construe the limited record before us, this *Brady* material was only useful to impeach the testimony of this particular witness, and, as the Appellate Division explained, petitioner "was given a full opportunity to utilize the prior testimony during trial." *White,* 229 A.D.2d at 611, 645 N.Y.S.2d 562. In fact, the grand jury testimony was not even useful for impeachment at trial, since the witness continued to deny all allegations of abuse against petitioner at trial. We also note that petitioner's lawyer, upon receiving and reviewing the grand jury testimony, made no application for a continuance. *See United States v. Wilson,* 160 F.3d 732, 741 (D.C.Cir.1998), *petition for cert. filed,* (U.S. Apr. 29, 1999) (No. 989187). Finally, and of utmost importance, petitioner was found not guilty of

---

3. It appears from the record that the assistant district attorney appearing for purposes of this habeas petition was not the attorney responsible for this conduct.

those counts directly related to that particular alleged victim's testimony (Counts 33 and 34), so that an earlier disclosure of the evidence could not have affected the outcome of the trial. *Paxson,* 861 F.2d at 737; *see also People v. Cortijo,* 70 N.Y.2d 868, 517 N.E.2d 1349, 523 N.Y.S.2d 463 (1987).[4] Indeed, once the witness had denied that she was assaulted by petitioner, the grand jury testimony was unnecessary, and even inadmissible except as a prior consistent statement to negate an imputation of recent fabrication or improper influence. *See* Fed.R.Evid. 801(d)(1). We are unpersuaded by petitioner's claim that even though the late delivery of the grand jury testimony of one alleged victim could not have prejudiced him because he was acquitted of the charge of molesting that person, it somehow impaired his defense relative to the abuse of other alleged victims. Since petitioner presents the court with no evidence, or even speculation, as to how the tardy delivery of this material prejudiced his case, we cannot hold that there is a reasonable probability that, had this grand jury testimony been turned over more promptly, the result at trial would have been different. *Bagley,* 473 U.S. at 682, 105 S.Ct. 3375.

### III. *Child Sexual Abuse Syndrome Testimony*

Child sexual abuse syndrome is an analytical concept developed by mental health professionals to explain common psychological patterns exhibited by children who have been sexually abused. Petitioner challenges the County Court's decision to allow a social worker to testify at his trial about this syndrome. We reject petitioner's claim for the following reasons.

 It is well-established in New York that testimony on child sexual abuse syndrome is generally permissible. *See, e.g., People v. Taylor,* 75 N.Y.2d 277, 552 N.E.2d 131, 552 N.Y.S.2d 883 (1990) (analogous rape trauma syndrome); *Matter of Nicole V.,* 71 N.Y.2d 112, 518 N.E.2d 914, 524 N.Y.S.2d 19 (1987) (testimony admitted in non-criminal proceedings); *People v. Penwarden,* 258 A.D.2d 902, 685 N.Y.S.2d 557 (1999); *People v. McGuinness,* 245 A.D.2d 701, 665 N.Y.S.2d 752 (1997); *People v. Grant,* 241 A.D.2d 340, 659 N.Y.S.2d 474 (1997); *People v. Weaver,* 222 A.D.2d 1046, 635 N.Y.S.2d 861 (1995); *People v. Shay,* 210 A.D.2d 735, 620 N.Y.S.2d 189 (1994). The Court of Appeals made clear in *Taylor* that testimony regarding child sexual abuse syndrome is permissible when admitted not to prove that the defendant committed the crimes charged, but only to explain behavior that would otherwise appear unusual to the average juror, such as why a victim of sexual abuse might not immediately report his or her abuse. *Taylor,* 75 N.Y.2d 277, 552 N.Y.S.2d 883, 552 N.E.2d 131; *see also McGuinness,* 245 A.D.2d at 702, 665 N.Y.S.2d 752; *Grant,* 241 A.D.2d at 341, 659 N.Y.S.2d 474. The People's expert in this case was careful not to give testimony that attempted to validate the victims or corroborate their truthfulness, nor did she give any testimony suggesting her belief that the attacks actually took place. In fact, the expert immediately testified that she did not even examine the alleged victims, and specifically explained that her testimony was "not to be used for the purposes of so-called validations[,] which means to diagnose or determine whether in fact such abuse has occurred." Trial Transcript at 291, 307; *see also Commonwealth v. Dunkle,* 529 Pa. 168, 172, 602 A.2d 830, 831 (Pa.1992). She did not testify as to the children's credibility. She did not even compare the characteristics of the syndrome with the children's behavior. The social worker simply testified as to the general characteristics of a sexually abused child, an area "beyond

---

4. Count 45, also related to this witness, was severed from the trial and therefore not considered by the jury.

the ken of the typical juror." *People v. Rodriguez*, 690 N.Y.S.2d 197 (N.Y.App. Div.1999); *see also State v. Edelman*, 593 N.W.2d 419, 423–24 (S.D.1999); More specifically, she limited her testimony to an explanation of the five emotional phases commonly associated with the syndrome, including "engagement, sexual interaction, secrecy, disclosure, and suppression." Trial Transcript at 293. Because the expert fastidiously avoided giving any testimony tending to "prov[e] that a rape occurred," *Taylor*, 75 N.Y.2d at 293, 552 N.Y.S.2d 883, 552 N.E.2d 131, and instead focused solely on an objective recitation of common emotional responses exhibited by victim's of child sexual abuse, her testimony was permissible.[5]

## IV. *Claim to Set Aside Verdict Based Upon "New" Evidence*

■ Petitioner claims that certain "new" evidence entitles him to a new trial. Before we analyze each item of the allegedly "new" material, we must· point out that petitioner seems to misunderstand our role as a federal court reviewing his habeas petition. Despite his request, we have no power to hold that the state trial court "abused it[s] discretion in denying defendant's motion to set aside the verdict based on new evidence...." *See* Habeas Corpus Petition at 6. This role has already been fulfilled by the Appellate Division, which specifically ruled that the trial court acted within its discretion in denying petitioner's motion to set aside the verdict based upon new evidence. *White*, 229 A.D.2d 610, 645 N.Y.S.2d 562. The law is clear that "the existence merely of newly discovered evidence relevant to the guilt of a state prisoner is not a ground for relief on federal habeas corpus." *Herrera v. Collins*, 506 U.S. 390, 400, 113 S.Ct. 853, 122 L.Ed.2d 203 (1993) (quoting *Townsend v. Sain*, 372 U.S. 293, 313, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963)). Federal courts are empowered to grant habeas relief only on a showing that a defendant has been denied rights guaranteed under the Constitution or laws of the United States. *Coogan v. McCaughtry*, 958 F.2d 793, 801 (7th Cir.1992) (internal citations omitted).[6] Thus, it is not sufficient to show that the trial court committed error in failing to set aside the jury's verdict.

■ In fact, under a literal interpretation of the relevant law, we have absolutely no power to grant habeas corpus relief based upon new evidence, even if that evidence might establish petitioner's actual innocence: "Claims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding." *Herrera*, 506 U.S. at 400, 113 S.Ct. 853.[7] Under a more liberal application of this rule, which we will apply, the newly discovered evidence must still be "so compelling that it would be a violation of the fundamental fairness embodied in the Due Process Clause not to afford a defendant a

---

5. Petitioner also protests that a Frye hearing was not conducted prior to the expert's testimony. *Frye v. United States*, 293 F. 1013 (D.C.Cir.1923), *overruled by Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). Because, however, child sexual abuse syndrome has been deemed by New York courts as generally accepted in the scientific community, such a hearing is unnecessary, and courts have allowed for such testimony without first conducting a Frye examination of the putative expert. *See, e.g., People v. Yates*, 168 Misc.2d 101, 637 N.Y.S.2d 625 (N.Y.Sup.Ct.1995).

6. The circuit court here adopted and re-printed the district court opinion in full.

7. This rule thus leaves room for those new evidence claims that are not "freestanding," *Herrera*, 506 U.S. at 404–5, 113 S.Ct. 853, but relate to a separate constitutional deprivation, such as a prosecutor's failure to comply with *Brady*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215. Petitioner makes absolutely no such claim (because he cannot) regarding this new evidence.

new trial at which the evidence could be considered." *Coogan,* 958 F.2d at 801 (internal quotations omitted); *see also Alleyn v. Warden,* 878 F.Supp. 30, 31 (M.D.Pa. 1995) (petitioner must at least make a "truly persuasive demonstration of innocence") (based on dicta in *Herrera,* 506 U.S. at 417, 113 S.Ct. 853, that uses the "truly persuasive" language).

■ Petitioner's "new" evidence falls far short of being "so compelling that it would be a violation of the fundamental fairness embodied in the Due Process Clause." *Coogan,* 958 F.2d at 801 (internal quotations omitted). First, petitioner presents the court with an affidavit of a witness who already testified at trial. *See* Affidavit of Eddie Hernandez. This affidavit only repeats testimony given by the affiant at trial, see Trial Transcript at 323–29, and the affiant even concedes that everything stated in his affidavit "I testified to . . . . [at] trial but the jury wished to believe [the alleged victim]." Such a repetitious affidavit defeats the very notion of "new" evidence, and we have no power to substitute our judgment for that of the jury.

■ Petitioner's second piece of "new" evidence consists of the affidavits of two witnesses who allege that they had spent time in petitioner's home during the period in which the abuses had occurred, but were never asked to testify. *See* Affidavits of Diana Allgeier and Ellen J. Clarke. These affidavits merely profess a willingness by the affiants to testify but give no information related to their potential testimony. The affidavits do not even contain denials that the abuses took place. The fundamental fairness of the trial is not undermined by "new" evidence consisting merely of two witnesses who attest that they spent time in petitioner's home during the period these alleged abuses took place and are willing to testify on petitioner's behalf. Petitioner's counsel presumably could have called dozens of witnesses who were in petitioner's home at various times, and he actually did call some such witnesses. The fact that he did not choose to call every witness who spent time in the household during this period does not render the trial fundamentally unfair, even if some of them would testify that they never witnessed any abuse.

■ Additionally, petitioner's third piece of "new" evidence consists of an affidavit from one of the victim's teachers, stating her belief that the boy was never abused by the petitioner because, inter alia, the child "never mentioned anything negative about [petitioner]" and because the boy was very "immature" and "impulsive." *See* Affidavit of Debbie Powaltz. Such speculation as to the general credibility of one of the petitioner's many alleged victims does not so offend our notion of due process that petitioner is entitled to a new trial. In fact, the affidavit is so speculative that we are not at all surprised that after interviewing Ms. Powaltz, petitioner's counsel chose not to call her as a trial witness.

■ Petitioner's final piece of "new" evidence is the only claim that requires more than the briefest attention. During the trial, the petitioner called a witness to testify that one of the foster children had called that witness from a hospital and had recanted his accusations against the petitioner. The People then recalled the foster child to give rebuttal testimony where he alleged that he was not permitted to make phone calls from the hospital, thus implying that it was impossible for him to have recanted the allegations by telephone. Petitioner's new evidence is another witness who alleges that the same child had called him from the hospital, suggesting that the child's assertion that he was unable to make calls from the hospital was a fabrication. *See* Affidavit of Anthony Giorgiano. We realize that this issue is not trivial, since it relates to the question of whether one of the victims ever disavowed his allegations against petitioner. However, we again remind that our jurisdiction does not empower us to issue a writ

merely because this evidence would have been useful at trial. Reading *Herrera* strictly, we have absolutely no power, especially in a non-capital case, to assess claims of actual innocence based upon new evidence. *See, e.g., Taylor v. Hannigan,* No. 93–3147, 1998 WL 239640, *20 (D.Kan. 1998). Even reading *Herrera* more liberally, as we are inclined to do, petitioner must at least present "a truly persuasive demonstration of innocence." *Herrera,* 506 U.S. at 417, 113 S.Ct. 853. At best, petitioner has demonstrated that the testimony from Giorgiano, impeaching the testimony of one of petitioner's victims, would be useful. If "usefulness of the evidence" was the standard of review, however, it would obviate the well-established rule that federal courts are not forums in which to relitigate state trials. *Barefoot v. Estelle,* 463 U.S. 880, 887, 103 S.Ct. 3383, 77 L.Ed.2d 1090 (1983). Petitioner must therefore demonstrate that this affidavit amounts to a "persuasive demonstration of his innocence." *Herrera,* 506 U.S. at 417, 113 S.Ct. 853. We cannot say that an affidavit from one of petitioner's acquaintances, contradicting the testimony of one of petitioner's alleged victims regarding his ability to make phone calls from a hospital, amounts to a persuasive demonstration of innocence. We understand that this putative testimony would be beneficial to petitioner, since it relates to the question of whether the victim could have used the phone to recant his accusations against petitioner. Nonetheless, this affidavit still does not satisfy the "extraordinarily high" threshold for relief based upon new evidence, *id.,* especially when one notes that courts have held that far more persuasive new evidence cannot justify the granting of habeas corpus relief. *See, e.g., Herrera,* 506 U.S. 390, 113 S.Ct. 853, 122 L.Ed.2d 203 (petitioner presented four affiants swearing someone else committed the crime); *Hall v. Lockhart,* 806 F.2d 165

(8th Cir.1986) (convicted participant in alleged murders would testify that petitioner had no role in the crime); *Medina v. Artuz,* 872 F.Supp. 1258 (S.D.N.Y.1995) (affidavit of trial witness claiming she lied at trial). For these reasons, petitioner's request for relief based upon the discovery of new evidence must fail.[8]

## V. *Ineffective Assistance of Counsel Claim*

■ Petitioner contends that his trial attorney's failure to make a motion to dismiss the indictment for violations of his right to speedy trial and the attorney's failure to call the witnesses discussed above constituted ineffective assistance of counsel. To prevail on such a claim, petitioner must show that counsel's performance was deficient and that he was so prejudiced by that deficient performance that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington,* 466 U.S. 668, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). For the reasons stated, *supra,* in rejecting petitioners' speedy trial claim as well as his claim related to the failure to call witnesses, petitioner's ineffective assistance claim must also fail. As to his claim that his counsel was ineffective for failing to make a speedy trial motion, since the motion likely would have been unsuccessful for the reasons already enunciated, trial counsel's failure to make the motion does not constitute ineffective assistance. *Boyd v. Hawk,* 965 F.Supp. 443, 450 (S.D.N.Y.1997).

■ In regard to petitioner's claim that trial counsel was ineffective for failing to call various witnesses, we have explained above that petitioner has utterly failed to show that there is a reasonable probability that the result at trial would have been different if this evidence had

---

8. For the same reasons, we need not order an evidentiary hearing on this matter. *See Boyd v. Puckett,* 905 F.2d 895 (5th Cir.1990) (holding that the court need not order an evidentia-

ry hearing because the evidence did not bear upon the constitutionality of the petitioner's detention); *Hall,* 806 F.2d 165 (same).

been presented. *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052. The potential testimony of these witnesses was either entirely speculative (*see* Powaltz Affidavit), repetitive (see Hernandez Affidavit), vague (*see* Allgeier and Clarke Affidavits), or related solely to the issue of credibility of one of the People's many witnesses (*see* Giorgiano Affidavit). While we recognize that Giorgiano's testimony would have been useful, it was intended to refute the essentially spontaneous assertion made by an alleged victim during cross-examination that he could not use the phone from the hospital. We cannot hold that the failure by petitioner's counsel, in the middle of trial, to discover a witness who could testify that the alleged victim could, in fact, use the telephone from the hospital, amounts to representation so deficient that it fell below an objective standard of reasonableness under prevailing professional norms. *Strickland,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674. For these reasons, petitioner's claim of ineffective assistance of counsel is denied.

## CONCLUSION

For the reasons stated herein, petitioner's § 2254 habeas petition is dismissed. As petitioner has not made a substantial showing of the denial of a constitutional right, a certificate of appealability will not issue. 28 U.S.C. § 2253(c)(2), as amended by the Antiterrorism and Effective Death Penalty Act of 1996. *See United States v. Perez,* 129 F.3d 255, 259–60 (2d Cir.1997); *Lozada v. United States,* 107 F.3d 1011 (2d Cir.1997). This Court certifies pursuant to 28 U.S.C. § 1915(a)(3), concerning proceedings in forma pauperis, that any appeal from this order would not be taken in good faith. *See Coppedge v. United States,* 369 U.S. 438, 82 S.Ct. 917, 8 L.Ed.2d 21 (1962).

SO ORDERED.