**F I L E D**

**UNITED STATES COURT OF APPEALS**

**October 20, 2005**

**FOR THE TENTH CIRCUIT**

TRUMAN WYLEY PETTIT, JR.,

Petitioner-Appellant,

v.

WARDEN ADDISON,

Respondent-Appellee.

No. 04-7044
(D.C. No. CV-03-209-P)
(E.D. Okla.)

**ORDER AND JUDGMENT** *

Before **EBEL** , **HARTZ** , and **McCONNELL** , Circuit Judges.

After examining the briefs and appellate record, this panel has determined

unanimously that oral argument would not materially assist the determination of

this appeal.  *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is

therefore ordered submitted without oral argument.

Appellant Truman Pettit, Jr., appeals from a district court order that

dismissed his 28 U.S.C. § 2254 petition for a writ of habeas corpus as untimely.

---

* This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel.  The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Because Pettit's habeas petition was premised on actual innocence, without an independent constitutional claim, we affirm without reaching the timeliness issue.

## BACKGROUND

In 1998, Petitt, who was represented by counsel, pleaded no contest to a charge of first degree rape. [1] He was convicted and sentenced to thirty-five years. Pettit did not seek to withdraw his plea in order to appeal.

In 2002, Petitt, with the assistance of counsel, sought post-conviction relief in state court because the victim, Pettit's daughter (hereinafter, "T.A."), had recanted. Pettit explained that he had pleaded no contest to spare T.A. "the emotional burden of testifying at a jury trial." R., Tab 9 at 18. In support of Pettit's post-conviction efforts, T.A. executed an affidavit stating: "the Defendant . . . has never sexually abused me in any way"; "the acts complained of in the Felony Information herein did not occur"; and "I was coerced into making false allegations against the Defendant by my mother." *Id.* at Ex. 2. Following

---

[1] In Oklahoma, a plea of no contest admits the facts pleaded in the information, but may not be used against the defendant in a related civil suit. *See Morgan v. State*, 744 P.2d 1280, 1281 (Okla. Crim. App. 1987) (stating that "a plea of nolo contendere has the same legal effect as a guilty plea except that it may not be used against the defendant as an admission in any civil suit based on the act upon which the criminal prosecution is based"); *Lozoya v. State*, 932 P.2d 22, 30 (Okla. Crim. App. 1996) (stating that a guilty plea "admits the facts pleaded in the information").

an evidentiary hearing in which T.A. testified, [2] the court denied relief on the basis that T.A.'s recantation was not credible and a detective's report from 1998 indicated that Pettit admitted having had sexual contact with T.A. on prior occasions.

Pettit appealed to the Oklahoma Court of Criminal Appeals (OCCA). The OCCA examined various aspects of T.A.'s testimony during the trial court's evidentiary hearing. First, the OCCA reviewed T.A.'s account of her mother's motivation for having Pettit falsely accused:

> My mother believed that if I could say that[,] then we would be able to get out of the marriage because my father liked to drink at the time. And he—he had—had a bad attitude and my Mom was pregnant by another man. And she believed that she could get out of telling him that [information].

R., Tab 9, Ex. F at 3 (quotation marks omitted) (second alteration in original). Next, the OCCA summarized when and how T.A. realized she had falsely accused Pettit:

> [T.A.] said it was in November of 2001 that she made her first disclosure that she "didn't think it happened." She first told her paternal grandmother, and her grandmother placed [T.A.] in counseling. After three or four months of being in counseling, [T.A.] told her counselors that she "didn't think it happened." Asked to explain[ ] what she meant by her repeated assertion that she "didn't think it happened," [T.A.] said, "I blocked most of it out," but asserted that "I've talked about it enough to know—where I think I . . . finally have memory enough to know what happened. And I've

---

[2] A transcript of the hearing is not in the record before this court.

-3-

talked to my mother about it, alone with her. And—she—she keeps telling me not to tell anybody what happened."

*Id.* (internal record citations omitted). The OCCA also included an exchange between T.A. and the district attorney which highlighted T.A.'s uncertainty:

> Q    And couldn't it be that you, since you've blocked this out, that you now have planted this back in your mind that it never really happened?
> A    No.
> Q    Why do you have doubts?
> A    Because I love my mother.
> Q    And you love your dad?
> A    Yes.
> Q    Doesn't that give you doubts about both of them?
> A    Yes.
> Q    And one of them, either your mother or your dad, did something bad to you, didn't they?
> A    Yes.
> Q    I mean either your father molested you or your mother told you to say he did?
> A    Yes.
> Q    And no matter what happened neither one of them, whoever was at fault, whether it was your dad or your mom, they shouldn't have done that to you, should they?
> A    No.
> Q    But you are not entirely certain which it is, are you?
> A    I'm pretty sure it was my mom.
> Q    But you are not entirely certain, are you?
> A    No.

*Id.* at 4. In March 2003, the OCCA affirmed, simply concluding that the trial court did not abuse its discretion in denying post-conviction relief.

On April 16, 2003, Pettit petitioned the federal district court pro se for habeas relief. The district court granted the warden's motion to dismiss, ruling

-4-

that Pettit's habeas petition was untimely filed more than one year after the date that his conviction became final on September 7, 1998. The district court declined to run the limitations period from Pettit's discovery of T.A.'s recantation, reasoning that Pettit had not been diligent, as "the victim's truthfulness could have been questioned before [Pettit] entered his plea." R., Tab 11 at 3.

Pettit filed a motion for rehearing and a notice of intent to appeal. The district court declined to issue a certificate of appealability (COA) and denied rehearing. This court granted Pettit a COA on two issues: (1) whether 28 U.S.C. § 2244(d)(1)'s one-year statute of limitations ran from Pettit's discovery of T.A.'s recantation; and if so, (2) whether the petition states a claim for relief. Because the second issue is dispositive here, we need not reach the more difficult issue of whether the limitations period should have been calculated from the date on which the "factual predicate" of Pettit's actual innocence claim "could have been discovered through the exercise of due diligence," *id.* § 2244(d)(1)(D).

## DISCUSSION

In *Herrera v. Collins*, 506 U.S. 390, 400 (1993), the Supreme Court explained:

> Claims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding. . . . This rule is grounded in

-5-

the principle that federal habeas courts sit to ensure that individuals are not imprisoned in violation of the Constitution—not to correct errors of fact. [3]

Pettit admits that his actual innocence claim has no independent constitutional component. Nevertheless, he points out that in *Herrera*, the Court did not entirely close the door to freestanding claims of actual innocence. The Court assumed, for argument's sake, "that in a capital case a truly persuasive demonstration of 'actual innocence' made after trial would render the execution of a defendant unconstitutional, and warrant federal habeas relief if there were no state avenue open to process such a claim." *Id.* at 417. [4] But as Pettit did not receive a death sentence, *Herrera*'s exception does not apply. *See Milone v. Camp*, 22 F.3d 693, 700 (7th Cir. 1994). *But see White v. Keane*, 51 F. Supp.2d 495, 504 (S.D.N.Y. 1999) (suggesting that a liberal reading of *Herrera* extends the exception to

_____

[3] Although actual innocence is not itself a recognized constitutional claim, it can serve as a "gateway" through which a habeas petitioner may advance an otherwise procedurally barred constitutional claim. *Herrera*, 506 U.S. at 404; *see also Schlup v. Delo*, 513 U.S. 298, 315 (1995).

[4] Although it is possible to interpret this court's opinion in *Sellers v. Ward*, 135 F.3d 1333, 1339 (10th Cir. 1998), a capital case, as barring freestanding claims of actual innocence "no matter how convincing the evidence," this court has applied *Herrera*'s assumed exception in capital cases before and after *Sellers*, *see, e.g., Stafford v. Saffle*, 34 F.3d 1557, 1561 (10th Cir. 1994); *Clayton v. Gibson*, 199 F.3d 1162, 1180 (10th Cir. 1999).

-6-

non-capital cases). [5] Furthermore, *Herrera* indicates that a freestanding actual innocence claim is not cognizable at all in habeas when a state avenue for relief is open, such as executive clemency. 506 U.S. at 417; *see also id.* at 427 (O'Connor, Kennedy, JJ., concurring); *id.* at 428 (Scalia, Thomas, JJ., concurring); *see, e.g.*, *Royal v. Taylor*, 188 F.3d 239, 243 (4th Cir. 1999); *Lucas v. Johnson*, 132 F.3d 1069, 1075 (5th Cir. 1998). Pettit disputes the legal effect, but not the availability, of such an avenue. [6] And even if *Herrera* could be read as allowing the assertion of a freestanding actual innocence claim in a non-capital habeas case where executive clemency remains unexhausted, Pettit has not cleared the "extraordinarily high" hurdle necessary to succeed, 506 U.S. at 417. T.A.'s recantation is not truly persuasive given (1) her less-than-certain state court testimony and (2) Pettit's admission of culpability by way of his no contest plea.

---

[5] *Herrera* suggests in two places that a truly persuasive demonstration of actual innocence might merit habeas relief in a non-capital case. First, the Court found "elemental appeal" in the proposition that "the Constitution prohibits the imprisonment of one who is innocent," 506 U.S. at 398. Second, the Court commented that "[i]t would be a rather strange jurisprudence" that would vacate a death sentence because of actual innocence, only to leave the innocent petitioner imprisoned for life, *id.* at 405.

[6] *See* Okla. Const. art. VI, § 10 (giving the governor power to grant commutations and pardons for all offenses except impeachment).

*See Herrera* , 506 U.S. at 418 (stating that actual innocence evidence "must be considered in light of the proof of petitioner's guilt at trial").

The judgment of the district court is affirmed. [7]

Entered for the Court


David M. Ebel
Circuit Judge

---

[7] Appellant's motion for leave to proceed in forma pauperis is granted.